## MARTINO v. MICHIGAN WINDOW CLEANING CO.

### No. 3449.

District Court, E. D. Michigan, S. D.

July 14, 1943.

Leon A. Cousens, of Detroit, Mich., for plaintiff.

Davidow & Davidow, of Detroit, Mich., for defendant.

PICARD, District Judge.

In an opinion rendered in this same matter February 3, 1943, denying plaintiff's petition for a summary judgment, this court expressed itself as follows: "Therefore, this court believes that the Kirschbaum case is not applicable; that there is a difference basically generating from the facts and that before plaintiff would be entitled to recover he would have to show that the greater part of the 'servicing' engaged in by the employer is not in intrastate commerce. It may be that the burden of proof is on defendant but in any event this court must know whether defendant was engaged mostly in intrastate commerce or interstate commerce." We quote the above because of the evident misunderstanding of plaintiff as to its interpretation. The important part of that paragraph to this court is contained in the words: *"but in any event* this court must know whether defendant was engaged mostly in intrastate commerce or interstate commerce".

Admittedly the question here turns upon the interpretation to be given that part of Section 13 of the Fair Labor Standards Act, 29 U.S.C.A. § 213(a) (2), which is as follows: "(a) The provisions of sections 6 and 7 shall not apply to * * * (2) any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce."

We decided in our original opinion that defendant was a service establishment, so that question is out of the way. Obviously then in conformity with the law above if more than 50 per cent of its business was interstate commerce, then its employees were under the act. But when this court rendered its February 3, 1943, opinion it didn't know whether defendant actually sent its men out of the state to service customers; whether the greater per cent of its customers were those who had their business here in Michigan but who were engaged in interstate commerce; or whether its business was a combination of the two. This court did not bind itself, as

intimated by plaintiff's counsel in his briefs, to any conclusions, simply because it was seeking facts. If more than 50 per cent of defendant's business was intrastate commerce, then the answer would have been simple; but because, as the facts stipulate, more than 50 per cent of its business was devoted to serving Michigan customers engaged in interstate commerce or buildings where the occupants thereof were engaged in interstate commerce, the question was entirely different and presented this court with necessity for further deliberation and research.

The question here then is: "Is a service establishment engaged in interstate commerce because its employees (who do not go out of the state to work) do render service to customers who are admittedly engaged in interstate commerce, which service indirectly aids those customers 'in the production of' their 'goods for interstate commerce' and which service amounts to more than 50 per cent of the service establishment's business?"

■ If the position contended for by plaintiff is a correct statement of the law, then a comparatively few people, service establishments or otherwise, would not be included as subject to the Fair Labor Standards Act. If rendering the service of washing windows in a building for occupants who are engaged in interstate commerce automatically makes the window washers engaged in interstate commerce, it would be difficult under our complex economic and commercial life to conceive a situation where any workman would not come under the act. From this conclusion it would be but another step to hold that a window washing company that served a hotel would have to find out from week to week what the occupants of the several hotel rooms did for a living, whom they were representing and if their firms were engaged in interstate commerce. Soon the law's applicability would be "reductio ad absurdum".

And this was not the decision in Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638. There the window washers, janitors and elevator operators were part of the establishment that was rented to the company engaged in interstate commerce. But, on the other hand, we do believe that the decision in this action is governed by the rule laid down in Lonas v. National Linen Service Corporation decided June 22, 1943, by our own Sixth Circuit Court of

Appeals, 136 F.2d 433. There on 20 per cent of defendant's business its employees actually went outside the state of its domicile, while 60 per cent of its service, although rendered within the state, was rendered to industrial firms. We believe we can assume that sufficient of those industrial concerns were engaged in interstate commerce to bring the facts analogous to those in the case at bar. In fact, this claim was made by the Administrator in the Lonas, supra, case, but the court held that defendant's employees did not come under the act and we so hold here.

■ May we not add that in rendering this opinion we are aware of the difference between the interpretative bulletins and instructions of the Administrator evidenced by briefs of the respective parties as directed to our attention by plaintiff. But even if the difference is as controlling as claimed by plaintiff and while this court has often recognized that the interpretations of the Administrator are entitled to "great weight", United States v. American Trucking Associations, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345, those interpretative bulletins are not the law. As stated by Judge Simons in Lonas v. National Linen Service Corporation, supra [136 F.2d 434]:

"The Administrator * * * contends that the exemptions in § 13(a) (2) are limited to establishments retail in character whether they sell goods or services. This view is based upon what he conceives to be the implications to be drawn from the legislative history of the Act and the grammatical construction of the exemption section. Since the related terms are coupled in the same sentence and are used in the disjunctive with the terms 'retail' and 'service' both modifying the word 'establishment,' they refer to employers who deal directly with private consumers as distinguished from commercial and industrial customers. In other words, the service establishment exemption extends only to those establishments having the characteristic of retail stores, and the defendant's business is not a retail service establishment because 60% of its customers are industrial or business concerns.

"We find no support for this interpretation in the language of the exemption section. Two enterprises are therein exempted, one a retail establishment and the other a service establishment, the exemption of each subject to the condition that in the case of the retail establishment the greater

part of its selling must be in intrastate commerce, and in the case of a service establishment, the greater part of its servicing must be in intrastate commerce. Had the Congress intended to limit the exemption of service establishments to those which perform services for private individuals as distinguished from business enterprises, it would have had little difficulty in clearly expressing such purpose."

A judgment in accordance with this opinion will be presented for our signature by defendant.