WALLING, Administrator of Wage and Hour Division, U. S. Dept. of Labor, v. ROLAND ELECTRICAL CO.

Civ. No. 1919.

District Court, D. Maryland.

Feb. 3, 1944.

734

Joseph R. Hirschmann, of Baltimore, Md., and Lemuel H. Davis, of Richmond, Va., for plaintiff.

Raphael Walter, of Baltimore, Md., for defendant.

COLEMAN, District Judge.

This is a case under the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 201–.219, in which the Administrator of the Wage and Hour Division of the United States Department of Labor seeks an injunction restraining the defendant, its employees and agents, from violating, as the complaint charges defendant has done ever since October 24, 1938, the provisions of Section 15(a) (1), 15(a) (2), and 15(a) (5) of the Act, 29 U.S.C.A. §§ 215(a) (1), 215(a) (2) and 215(a) (5), which prohibit carrying on an interstate business in goods in the production of which there was employment contrary to the wages and hours requirements of the Act.

There is a lengthy stipulation of facts in the case, as a result of which extensive testimony was dispensed with, although some testimony was taken at the hearing to supplement the stipulation, and also some that is related to factual questions not actually covered by the stipulation.

From all of the aforegoing we find the following facts:

The defendant is a corporation engaged in Baltimore in the business of buying and selling new and used electrical motors of various types; of repairing, reconditioning and rebuilding used motors, and of installing and repairing private, commercial and industrial wiring systems.

The detailed character of defendant's business is as follows: (1) The relocation and extension of wiring in systems already installed in private, commercial, and industrial establishments. (2) The repair of private, commercial and industrial wiring systems. (3) The installation of wiring in new private, commercial and industrial establishments. (4) The installation and relocation of commercial and industrial motors, including the installation of necessary switches, wiring, etc. (5) Sale of electrical materials and supplies over the counter. (6) Rental for periods of a month or less of motors, floodlights, compensators, etc., to commercial and industrial firms. (7) Sale of new and used motors. (8) Reconditioning, repairing, and rebuilding electric motors and generators in its shop and repairing motors and generators on its customers' premises by removing old and defective brushes, commutators, armatures, stators, wiring and bearings; and by replacing said parts with new, reworked, and built-in parts. (9) The fabricating, when necessary, of shafts, brushes and other motor parts in connection with its reconditioning, repairing and rebuilding operations.

A substantial number of the motors which defendant regularly sold, reconditioned, repaired, rebuilt and relocated, and a substantial part of the wiring which was installed, relocated and repaired for various customers of the defendant were used in the production of goods for interstate commerce; a substantial number of the motors repaired, reconditioned, and rebuilt were small motors, such as those used for electric fans, drink mixers, and oil burners, and a majority of the work in repairing and reconditioning motors in dollar volume was done on motors used for industrial purposes, such purposes being the production of goods for commerce.

In connection with its operations, it is stipulated that, as of November, 1942, the company had some thirty-six employees classified as follows: six office employees, nineteen in the shop department, consisting of a foreman, "trouble shooters", mechanics and helpers; and eleven in the wiring department, consisting of mechanics and helpers. The stipulation embraces rather elaborate tables showing the breakdown of the various types of activities performed and the volume of earnings in connection therewith. As of November 1, 1942, the company had approximately a thousand active accounts, 99 per cent of which were with commercial or industrial firms; during the period from January 1, 1942, through October 31, 1942, every mechanic of the defendant worked, during practically every work week, for some one or more of thirty-three of these customers whose accounts were the most active, either in the repair of their motors, generators, the reconstruction of used motors sold to them, or in performing electrical work at their respective establishments. Certain of these customers—four or five—were engaged in the repair of ships, tugs, barges, and other vessels which were intended for movement in interstate commerce. As respects practically the entire balance of customers on defendant's most active list, their business was that of the production of goods for interstate shipment, i. e., they shipped at least a substantial portion of

their total production to points outside the State of Maryland. As of November 1, 1943, the defendant had in its shop approximately 400 motors awaiting reconditioning, repairing or rebuilding, a substantial number of which were used in the production of goods for commerce.

Defendant holds, and is currently operating under, a certificate of exemption from taxation on machinery as a manufacturer, issued by the City of Baltimore under a municipal ordinance.

The foregoing facts illustrate the main characteristics of the different types of activities in which the defendant company is engaged. It is undisputed that whereas defendant's annual gross business was of the value of approximately $300,000 in the period here involved, it made only six interstate sales during that period, aggregating a gross return of $910; and also that, in so far as its dealing in scrap-iron or other metal was concerned, it sold only 13,-000 pounds and derived only $500 therefrom, which was sold to local junk dealers, and which ultimately found its way into interstate commerce.

■ From these facts it is conceded by the Administrator, as, indeed, it must be, that defendant, through none of its employees, was engaged in "commerce" as defined by the Act, that is, in interstate commerce, but the questions presented are (1) whether its employees are entitled to the wage and hour benefits of the Act, because engaged "in the production of goods" for commerce as defined by the Act; and (2) whether defendant is exempt as a "retail or service establishment" under the Act. As to production, the Act provides, Section 3 (j), 29 U.S.C.A. § 203(j): " 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this chapter an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State." As to exemptions, the Act provides, Section 13(a), 29 U.S.C.A. § 213(a): "The provisions of sections 206 and 207 of this title shall not apply with respect to * * * (2) any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce; * * *."

The business of the defendant, as disclosed by the facts just set forth, may be further summarized as follows: Approximately 27 per cent of its gross business is strictly motor and generator repair business; 35 per cent is that of installing new wiring systems in industrial plants and also in repairing their existing wiring systems; and the rest, nearly 40 per cent, of the company's activities relate to sales of motors and supplies, or, in terms of dollars, about $120,000 worth of business, out of a gross business of $300,000 for the period here involved, representing the sale of new and used motors and parts. The proportion of new motors so disposed of represents about 40 per cent and of used motors about 60 per cent of these total sales. The company manufactures no motors, in the sense of building them "from the ground up," but it buys completely new motors, and also repairs old ones. The majority of all of these motors, new and old, supplied to customers, are used, as has already been pointed out, by those customers in their business of "production of goods" for commerce.

Counsel for the Administrator contend that the recent decision by the Circuit of Appeals for this Circuit in Guess v. Montague, 140 F.2d 500, 503, is a direct authority for the position taken by the Administrator in the present case, namely, that defendant's employees are to be construed as being engaged "in the production of goods" for commerce and not exempt under Section 13(a) (2) of the Act, either as a "retail or service establishment." Since the decision just referred to had to do with a machinery repair shop, albeit the repairing was of a more general character —in that the concern involved apparently did not confine its work to any particular type of machinery, as does the present defendant—it is necessary to determine whether the facts in that case are so akin to those in the present case as to require a similar decision.

A finding of the following facts appears to have been basic to the decision in the Guess case: First, the Court found that a substantial part of the business done was interstate, and it does not appear that any record was kept separating the labor performed in connection with interstate transactions from those purely intrastate, or that it would have been feasible to make such separation. Second, in the making over of old machinery, scrap was accumulated in large quantities, that is, in carload lots,

and sold to industrial concerns that produced goods for interstate commerce. Third, resale of the rebuilt machinery was one of the primary, if not the primary, part of the defendant's business; and fourth, the Court held that the business was not a "service establishment" within the meaning of the exemption contained in Section 13(a) (2) of the statute, because, as it said (140 F.2d 500, at page 503), "the 'service' establishment contemplated by that exemption must be of the same sort as the 'retail' establishment therein referred to, i e. it must be one 'selling services to consumers', and this the clear intimation of the Supreme Court. Kirschbaum v. Walling, 316 U.S. 517, 526, 62 S.Ct. 1116, 1121, 86 L.Ed. 1638." Continuing, the Court said: "As suggested by the Circuit Court of Appeals of the Second Circuit in Fleming v. Arsenal Building Corporation, 2 Cir., 125 F.2d 278, 280, we think that the exemption 'should be limited to those who serve consumers directly, like tailors, or garages, or laundries.'" Further, the Court said: "While the repair of machinery for customers, if there were nothing more, might fall within the exemption, the very substantial business of conditioning and selling scrap would certainly not come within it. Bracey v. Luray [4 Cir., 138 F.2d 8], supra. Nor would the work done in rebuilding and reconditioning second hand machinery for sale by defendant fall within the exemption, which does not extend to manufacturing or processing goods for sale."

The foregoing, taken from the Guess case, is sufficient to indicate that the factual differences between that case and the present one are very substantial. Of greatest significance, of course, is the finding in that case that a substantial part of the business was interstate, and that separation of the interstate from the intrastate transactions was impossible from the company's records. We have no such situation here. Indeed, the direct interstate business represented by sales is limited to some six transactions, and is of such relatively small value and extent as to require that the present case be treated as not one where the defendant company has been engaged in interstate commerce within the meaning of the Act.

But the point is urged upon us that a reasonable construction of the law as applied to the facts in the present case requires the conclusion that defendant's employees were engaged in a "process or occupation necessary to the production" of goods for interstate commerce.

It may be admitted, in view of the recent succession of decisions of the Supreme Court which each time extends the scope or definition of interstate commerce under the Fair Labor Standards Act of 1938 and related legislation, that the present case is on the border-line.

But we are here asked by the Government to say, in effect, that putting a piece of essential machinery in a plant that produces goods for commerce, or conditioning, repairing or keeping in good operating condition such machinery, is an activity so closely related to the production of the goods in the plant that it is a process or occupation necessary to that production. On the other hand, we have been referred to no case which we think on similar facts goes that far. We are inclined to the view that on this phase of the case the view of the Administrator should not be accepted. However, we do not feel that it is necessary to rest our decision on that ground. We believe the defendant company is entitled to receive from this Court a definite interpretation, as applied to its case, of the meaning of the exemptions in Section 13 (a) (2) of the Act, which we have already quoted.

There have been numerous decisions construing these exemption provisions, but the facts in the different cases usually differ in material respects. Among the more recent decisions see Lonas v. National Linen Service Corporation, 6 Cir., 136 F.2d 433; White Motor Co. v. Littleton, 5 Cir., 124 F.2d 92; Martino v. Michigan Window Cleaning Co., D.C., 51 F.Supp. 505, and Muldowney v. Seaberg Elevator Co., D.C., 39 F.Supp. 275. It is to be noted that the exemption is two-fold: it applies both to a retail establishment and to a service establishment. We believe that counsel for the defendant company is correct in saying that the defendant company falls within both exemptions because as to its sales of old and new motors it conducts a retail business, since (1) it sells locally and, in effect, to the consumer; and (2) as to repairing and reconditioning, it is performing the duties of a service establishment. Interpretive Bulletin No. 6 issued December, 1938, revised June, 1941, by the Wage and Hour Division of the United States Department of Labor, construes both exemptions as limited to establishments retail in character, whether they sell goods or

services. In other words, since the related terms are coupled in the same sentence and are used in the disjunctive with the terms "retail" and "service" both modifying the word "establishment", they are said to refer to employers who deal directly with private consumers, as distinguished from commercial or industrial consumers. That is to say, under the Government's construction, the service establishment exemption extends only to those establishments having the characteristics of retail stores. However, we do not accept this interpretation. Nor do we think that the Circuit Court of Appeals for this Circuit, in Guess v. Montague, supra, intended to go so far when it said that the establishments contemplated by the exemptions must both be of the same sort in the sense that both exemptions "should be limited to those who serve consumers directly, like tailors, or garages, or laundries." As the Circuit Court of Appeals for the Sixth Circuit said in Lonas v. National Linen Service Corp., supra, 136 F.2d at page 434, in declaring exempt the employees of a linen supply company, 20% of whose business was interstate: "Had the Congress intended to limit the exemption of service establishments to those who perform services for private individuals as distinguished from business enterprises, it would have had little difficulty in clearly expressing such purpose." Similarly, in Martino v. Michigan Window Cleaning Co., supra, an employer engaged in the cleaning of windows was held to be a "service establishment", the greater part of whose servicing was in intrastate commerce.

As already pointed out, in the Guess case the Circuit Court of Appeals said that in order to bring a business within either exemption, it must be limited to dealing directly with the consumer. It is conceded by the Administrator in the present case that the business of selling both old and new automobiles is a retail business, falling within the retail establishment exemption, even though the cars are sold with knowledge that they are to be used in interstate commerce or in connection with the production of goods for such commerce. Similarly, it is conceded that the ordinary service which the average automobile service-station performs for motorists is of the type falling within the service establishment exemption, even though the cars so serviced move in interstate commerce, or play a substantial part in the production of goods for commerce. Therefore, we reach

the conclusion that the defendant company falls within both branches of the exemption provision, if we are to give a reasonable interpretation to the words "any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce."

The present case is devoid of evidence of any manufacturing in the sense of constructing a wholly new article. The manufacturing that defendant does, consists of reconditioning, repairing and making over electrical appliances. We are unable to distinguish between the business of repairing, installing and inspecting electrical equipment from that of an automobile or a radio repairman. We believe that the services, from a legal point of view, are all substantially the same. Nor do we think that the test is how much of the work is done on the company's own premises, or on those of the patrons serviced. To make any such distinction would be to draw too fine a line. It is true that the Circuit Court of Appeals, as just pointed out, says that these exemptions under the Act contemplate disposition of the articles or goods to the consumer. Literally, to consume means "to use up." An obvious typical case is that of a restaurant, a butcher shop or grocery. But, of course, it is perfectly obvious that the exemptions in the Act are not restricted to cases of that kind. Such businesses as barber shops, beauty parlors, clothes pressing establishments, linen supply and window cleaning companies must obviously be included, as well as retail businesses generally. We construe the exemptions to embrace transactions had directly with local customers who are the "consumers" of the goods sold or the services rendered, in a broad sense. We are not willing to say that, just because such local "consumption" forms an essential part in the function of producing goods for commerce, the exemption granted by the Act must be treated as subordinate and inapplicable. We are not prepared to accept that view because, if true, then, local business generally would be constantly subject to the whim, to the variations of administrative interpretation of the law.

Counsel for the Administrator stress that our conclusion will produce a grave inequality in that persons doing, in our great industrial plants, the same sort of work as the defendant's employees perform, are within the provisions of the Fair Labor Standards Act, while defendant's employees

738

are not. This may be an unfortunate state of affairs, but it presents a practical and not a legal question. If it be a fact that the present defendant is entitled to rely upon either one or both of the exemptions in the Act, then, the result, though anomalous or productive of unsatisfactory labor conditions, is not one for this Court to remedy or avoid, but is a matter for legislative action.

To summarize: Unlike the Guess case, supra, we have here a company no substantial part of whose business during the period under review was interstate; a company which did no manufacturing of its own in the ordinary sense; a company whose conditioning and selling of scrap was of a very small and inconsequential character; a company whose sales were, except in a very few minor instances, strictly intrastate, and a company whose repair operations on the machinery or plants of customers are to be treated as a separate, distinct repair or service business.

An order will be signed in accordance with this opinion, dismissing the complaint.