## ROLAND ELECTRICAL CO. v. BLACK et al.
### No. 5600.

Circuit Court of Appeals, Fourth Circuit.

Aug. 12, 1947.

O. R. McGuire, of Washington, D. C., and David S. Sykes, of Baltimore, Md. (Nyburg, Goldman & Walter, of Baltimore, Md., on the brief), for appellant.

William L. Marbury, of Baltimore, Md. (Franklin G. Allen, of Baltimore, Md., on the brief), amicus curiæ.

Paul Berman and Sigmund Levin, both of Baltimore, Md. (Theodore B. Berman, of Baltimore, Md., on the brief) for appellees.

Before PARKER, SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This suit was instituted on March 13, 1945, by employees of the Roland Electrical Company under the Fair Labor Standards Act, 29 U.S.C.A. § 216, to recover overtime compensation, liquidated damages and counsel fees with respect to services rendered during the period from October 24, 1940 to January 10, 1945. During the pendency of the case it was decided in an injunction suit brought by the Administrator of the Wage and Hour Division of the Department of Labor that the contention of the company that it was not subject to the terms of the Act was not tenable. Walling v. Roland Electrical Co., D.C., 54 F.Supp. 733; Id., 4 Cir., 146 F.2d 745; Roland Electrical Co. v. Walling, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383. In the pending case it was conceded that during certain workweeks the plaintiffs were not paid one and one-half times the regular rate as required by the Act for work done during hours in excess of the statutory minimum; but the defense was set up that the deficiencies were offset (1) by payment in excess of the statutory requirement in other weeks, and (2) by certain sums paid as a regular year-end bonus. The additional defense was made that the claims arising in part of the period covered by the suit were barred by the Maryland statute of limitations, Article 57, § 1, of the Maryland Code of 1939, which provides, inter alia, that all actions in simple contract shall be commenced within three years from the time the cause of action accrues. The

District Judge rejected these defenses, Black v. Roland Electrical Co., D.C., 68 F. Supp. 117, and entered judgment for the plaintiffs in varying amounts, and allowed a counsel fee in the sum of $500.

For more than 25 years, the company has been engaged in the business of selling and repairing electrical equipment. It has operated on the basis of a 44 hour week, and has paid its employees an agreed straight-time hourly rate in excess of the statutory minimum. This rate was paid for work done between the hours of 8 a. m. and 4:30 p. m., with a half-hour lunch period, from Monday to Friday, and between 8 a. m. and 12 noon on Saturday. In addition it was frequently necessary for the employees to work before or after these hours, or on Sunday, upon the electrical equipment of customers so as not to interfere with their operations during the usual workday. For services during these less desirable hours of employment, the company, in accordance with a long standing policy, paid its employees one and one-half times the hourly rate fixed for other portions of the day, even though the total hours of service were less than 8 hours per day. In short, the agreed rate for the so-called off-hours' work was one and one-half times the agreed rate for the balance of the day.

The result of this practice was that the employees customarily worked more than the maximum hours per week prescribed by the Act, and were therefore entitled to compensation for the excess at a rate not less than one and one-half times the regular rate; and, if the wages actually paid during the off hours may be considered payment at one and one-half times the regular rate, the plaintiffs in some weeks received more than the minimum compensation required by the Act and in other weeks, less than that amount. It is this excess in certain weeks that the company seeks to offset against the deficiency in other weeks.[1]

In addition the company claims the right to offset against the deficiencies certain bonus payments which, instead of Christmas gifts in prior years, were given in each year from 1941 to 1944 on the pay day preceding the year-end holidays in the amount of five per cent. of the gross earnings of the employees as of the end of November of each year. These payments were made voluntarily in the discretion of the company and were not made pursuant to a prior agreement with the employees. However, the payments were treated as ordinary expenses of the business and the amounts paid were deducted from gross income in computing the taxable net income of the company and were subjected to the withholding tax on wages imposed by statute.

Under these circumstances, we are in accord with the decision of the District Court in so far as it holds that payments in excess of the amount required by the statute to an employee for work done in certain weeks do not relieve the employer from the obligation to compensate the employee for deficiencies in other weeks, or from the obligation to pay him in addition an equal sum for liquidated damages. The opposing argument fails to take account of two principles basic to the Act and buttressed by the force of judicial decision and the persuasiveness of administrative interpretation. Initially, it disregards the

[1] An illustration of the company's computation is found in two workweeks of R. E. Black, one of the plaintiffs, who was paid at the rate of 85¢ an hour for the work done between 8 a. m. and 4:30 p. m., and $1.275 per hour for work done before and after those hours. In one week Black worked 36½ hours, of which 32 hours were between 8 a. m. and 4:30 p. m., and 4½ hours during the other parts of the day. For the period of 32 hours Black was paid at the rate of 85¢ per hour, or $27.20, and for the remaining 4½ hours, Black was paid at the rate of $1.275 per hour, or $5.74, totalling $32.94 for the week. By the company's computation Black was entitled to only $31.94 under the Act, or 36½ hours at 85¢ per hour. Accordingly, the company claims a credit of $1.91 for this week. In another week, Black worked a total of 46 hours, including 4 hours over the statutory maximum, which entitled him to overtime compensation under the Act. He was paid a total of $41.86 because part of the hours occurred during the off-hour period. The defendant claims that he was entitled to only $40.80 under the Act, and claims a credit for the balance of $1.06.

now well settled construction that the Act takes as its standard a single workweek consisting of seven consecutive days. See Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 579, 62 S.Ct. 1216, 86 L.Ed. 1682. And even where it is conceded that the employer believed in good faith that he was not covered by the Act, nevertheless, if he fails to pay overtime compensation promptly and when due on any regular payment date, the statutory action for the unpaid minimum and liquidated damages given under Section 16(b) immediately arises in favor of the aggrieved employee. Seneca Coal & Coke Co. v. Lofton, 10 Cir., 136 F.2d 359, 363, certiorari denied, 320 U.S. 772, 64 S.Ct. 77, 88 L.Ed. 462; Rigopoulos v. Kervan, 2 Cir., 140 F.2d 506, 507, 151 A. L.R. 1126; Atlantic Co. v. Broughton, 5 Cir., 146 F.2d 480, 482; Keen v. Mid-Continent Petroleum Corp., D.C.Iowa, 63 F. Supp. 120, 128, 129, affirmed 8 Cir., 157 F.2d 310. This accords with the public policy embodied in the Act with respect to minimum wages and maximum hours alike, so that an employer is not allowed to compromise or settle with his employees and thereby reduce the sum fixed by Congress as proper compensation for withholding wages beyond the time when they should be paid. Brooklyn Savings Bank v. O'Neil, 324 U.S. 697, 704, 705 note 14, 65 S.Ct. 895, 89 L.Ed. 1296; D. A. Schulte Inc. v. Gangi, 328 U.S. 108, 116, 66 S.Ct. 925, 90 L.Ed. 1114, 167 A.L.R. 208. Cf. Guess v. Montague, 4 Cir., 140 F.2d 500.[2]

Furthermore, the so-called excess payments in certain weeks were not made or intended to be made as compensation for overtime work within the contemplation of the Act, but as additional compensation for work done by the employees during the less desirable parts of the day; and it cannot be contended that the increased pay for work during inconvenient hours should now be considered as payment at one and one-half times the regular rate required for excess hours under the statute.

Much the same reasoning may be applied to the rejection of the credit claimed by the defendant on account of the payment to its employees of the year-end bonuses. These payments did not constitute the timely week-end payments which the defendant should have made. They were obviously paid as compensation for services previously rendered in order to allow the employees to share in the profits of the business and to incite them to further efforts in the company's behalf. They were given, as such bonuses usually are, as additions to the regular pay when at the end of the year it was found that the business could afford them, and they were not intended either as overtime compensation or as a substitute for weekly payments due under the Act.

We find nothing in Bumpus v. Continental Baking Co., 6 Cir., 124 F.2d 549, 140 A.L.R. 1258, or Corey v. Detroit Steel Corporation, D.C.,E.D. Mich, 52 F.Supp. 138, upon which the defendant relies, at variance with the conclusions we have reached.

This discussion leads to the conclusion that the company in fact made no payments to its employees which may be treated as excess or overpayments in the contemplation of the statute, even if the rule as to prompt payment at each pay period should be disregarded. The evidence shows conclusively that the defendant maintained two rates of pay; one for the hours between 8. a. m. and 4:30 p. m., and the other, one and one-half times higher, for the remaining hours of the day, so that each rate was the "regular rate" for the period to which it applied. These rates were in fact the contract rates between the parties, and the higher pay for the off-hours period was not an overpayment but merely compensation in accordance with the contract between them.[3]

The basic rules for computing the "regular" and "overtime" rates of pay under the statute, as they have emerged in the liti-

---

[2] Interpretative Bulletin No. 4, "Maximum Hours and Overtime Compensation" issued by the Administrator of the Wage and Hour Division, U. S. Dept. of Labor Nov. 1938, and revised Oct. 24, 1940, is in harmony with these decisions.

See paragraphs 3, 5, 29, 41, 43, 53 and 57.

[3] This determination would require a recomputation of the amounts due to the plaintiffs, based on both regular rates. But the parties have entered into a stip-

gated cases, require this conclusion. Thus in Walling v. Helmerich & Payne, 323 U.S. 37, 65 S.Ct. 11, 12, 89 L.Ed. 29, the court condemned as a violation of the statute the split-day plan of computation which was designed to insure that the total wages paid would remain the same notwithstanding the provisions of the Act. Under this method, the daily shifts or tours of duty of the employees were arbitrarily divided into two parts so that, for example, the first 4 hours of an 8-hour shift were given a specified or "base or regular rate" and the remaining hours were treated as "overtime" and called for payment at one and one-half times the basic rate. With respect to this plan the court said at page 42 of 323 U.S., at page 14 of 65 S.Ct., 89 L.Ed. 29: "It is no answer that the artificial regular rate was a product of contract or that it was in excess of the statutory minimum. The Act clearly contemplates the setting of the regular rate in a bona fide manner through wage negotiations between employer and employee, provided that the statutory minimum is respected. But this freedom of contract does not include the right to compute the regular rate in a wholly unrealistic and artificial manner so as to negate the statutory purposes. Even when wages exceed the minimum prescribed by Congress, the parties to the contract must respect the statutory policy of requiring the employer to pay one and one-half times the regular hourly rate for all hours actually worked in excess of 40. Any other conclusion in this case would exalt ingenuity over reality and would open the door to insidious disregard of the rights protected by the Act."

In like manner it was held in Walling v. Youngerman-Reynolds Hardwood Co., 325 U.S. 419, 65 S.Ct. 1242, 89 L.Ed. 1705, where there were two rates of pay for different kinds of work, that the parties could not lawfully set up by contract a regular rate per hour which was obviously artificial. The court said at pages 424, 425 of 325 U.S., at page 1245 of 65 S.Ct., 89 L.Ed. 1705: "* * * The regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments. It is not an arbitrary label chosen by the parties; it is an actual fact. Once the parties have decided upon the amount of wages and the mode of payment the determination of the regular rate becomes a matter of mathematical computation, the result of which is unaffected by any designation of a contrary 'regular rate' in the wage contracts."

Again in Walling v. Harnischfeger Corp., 325 U.S. 427, 65 S.Ct. 1246, 89 L.Ed. 1711, where the employees received a basic hourly rate plus an incentive bonus, it was held that the bonus necessarily entered into the regular rate of pay contemplated by the statute. The court said at pages 430, 431, at page 1248 of 65 S.Ct., 89 L.Ed. 1711: "Those who receive hourly rates at least 20% higher than their guaranteed base rates clearly are paid a regular rate identical with the higher rate and the failure of respondent to pay them for overtime labor on the basis of such a rate is a plain violation of the terms and spirit of Section 7(a) [29 U.S.C.A. § 207(a)]. No contract designation of the base rate as the 'regular rate' can negative the fact that these employees do in fact regularly receive the higher rate. To compute overtime compensation from the lower and unreceived rate is not only unrealistic but is destructive of the legislative intent. A full 50% increase in labor costs and a full 50% wage premium, which were meant to flow from the operation of Section 7(a), are impossible of achievement under such a computation."

Very like the situation in the pending case was that presented to the court in Aaron v. Bay Ridge Operating Company, 2 Cir., 162 F.2d 665; 6 W.H.Cases 954, where wage agreements between a stevedor-

---

ulation as to the amounts due in case of a decision adverse to the employer, and this computation is based only upon the rate payable during ordinary working hours. The plaintiffs expressly waive any claim to a greater sum.

By reason of this stipulation we have no occasion to decide whether or not the bonus payments should be considered a part of the regular rate of pay and included in computing the regular hourly rate and overtime compensation. See 1944–1945 W. H. Man. 184–7, 1502–4; L. L. R., 1947, W. H. Cases 1218. Cf. Walling v. Adam Electric Co., 8 Cir., 163 F.2d 277, 7 W. H. Cases 78.

ing company and its employees provided for a workday of 8 hours, a workweek of 44 hours, and fixed two sets of hourly rates, (1) for hours between 8 a. m. and 5 p. m. from Monday to Friday, and 8 a. m. and 12 noon on Saturdays, and (2) one and one-half times this rate for all other hours. After the Fair Labor Standards Act went into effect, the hours first specified were called "straight time" and the remaining hours, "overtime", and the rates for the latter period were described as "overtime rates". The court held that each of the rates described was the statutory "regular rate" for the period to which it applied, and that in each period overtime compensation must be computed in reference to the applicable rate. See also, 149 Madison Ave. Corporation v. Asselta, 67 S.Ct. 1178.

We come finally to the question of limitations which arises because the services in suit were performed by the plaintiffs between October 24, 1940 and January 10, 1945, while the suit was not brought until March 13, 1945. Limitations were pleaded to all claims which accrued prior to March 13, 1942, and it is therefore necessary to decide whether the suit is based upon wage contracts governed by the three year statute of limitations specified in Art. 57, § 1, of the Maryland Code, or is based upon the Fair Labor Standards Act to such an extent that it must be considered a suit on a specialty for which a twelve year period of limitations is provided by Art. 57, § 3, of the Maryland Code.[4]

Under the established rule we must have recourse to these state statutes since the federal act prescribes no periods of limitations.[5]

Our interpretation of the state statutes must be controlled by the decisions of the state courts, and in this instance the question is not free from difficulty since no binding state decision on the precise point involved has been rendered. A decision directly applicable, contrary to the one we have reached, was rendered in Manhoff v. Thomsen-Ellis-Hutton Co., 6 Labor Cases 61,498, by Judge Eli Frank, an able and experienced member of the Supreme Bench of Baltimore City, a court of nisi prius jurisdiction; but after careful consideration, we have reached the conclusion that it is not in accord with the rules announced in related cases by the Court of Appeals of Maryland, the highest court of the state. Judge Frank's decision, while entitled to great respect, would not be binding on other trial courts of the state and under the rulings of the Supreme Court is not binding upon us. Fidelity Union Trust Co. v. Field, 311 U. S. 169, 61 S.Ct. 176, 85 L.Ed. 109; Stoner v. New York Life Ins. Co., 311 U. S. 464, 61 S.Ct. 336, 85 L.Ed. 284; West v. American T. & T. Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139, 132 A.L.R. 956; Six Companies of California v. Joint Highway District, 311 U.S. 180, 61 S.Ct. 186, 85 L.Ed. 114; The Order of Commercial Travelers of America v. King, 4 Cir., 161 F.2d 108.

The Maryland statutes had their origin in the Act of 21 James I, ch. 16, sec. III. Alexander's British Statutes (Coe's Ed., Vol. 2, p. 599). See also Chapter 23

---

[4] Md.Code Ann. (Flack, 1939) Art. 57, § 1. "All actions of account, actions of assumpsit, or on the case, except as hereinafter provided, actions of debt on simple contract, detinue or replevin, * * * shall be commenced, sued or issued within three years from the time the cause of action accrued; * * *."

Md.Code Ann. (Flack, 1939) Art. 57, § 3. "No bill, testamentary, administration or other bond (except sheriffs and constables' bonds), judgment, recognizance, statute merchant, or of the staple or other specialty whatsoever, except such as shall be taken for the use of the State, shall be good and pleadable, or admitted in evidence against any person in this State after the principal debtor and creditor have been both dead twelve years, or the debt or thing in action is above twelve years' standing; * * *."

[5] The present suit was brought before the effective date of Ch. 518 of the Laws of the General Assembly of Maryland of 1945 and consequently the three-year period of limitations imposed on suits under the Fair Labor Standards Act prescribed by the Maryland statute is not applicable. See Swick v. Glenn L. Martin Co., 4 Cir., 160 F.2d 483.

The limitation provisions of the Portal-to-Portal Act of 1947, Part 4 § 6, 29 U.S.C.A. § 255, are likewise inapplicable here since they were limited to actions commenced on or after the date of the enactment of the statute.

of the Laws of Maryland of 1715. The great disparity between the three year and the twelve year periods specified in the statute must have been based upon some distinction in the legislative mind between the character of the actions involved, and we may reasonably suppose that this distinction was related to the general purpose which statutes of this sort are designed to serve. That purpose was described by Mr. Justice Story in Bell v. Morrison, 1 Pet. 351, 360, 7 L.Ed. 174, in the following terms: " * * * It (the statute of limitations) is a wise and beneficial law, not designed merely to raise a presumption of payment of a just debt, from lapse of time, but to afford security against stale demands, after the true state of the transactions may have been forgotten, or be incapable of explanation, by reason of the death or removal of witnesses. It has a manifest tendency to produce speedy settlements of accounts, and to suppress those perjuries which may rise up at a distance of time, and baffle every honest effort to counteract or overcome them."

Accordingly, it is significant that actions, such as trespass, trover, contract and slander, in which the fullness of time weighs heavily against the preservation of the evidence that frequently depends upon imperfect memory or informal writings, are found in the three year category, while actions on formal instruments or records, such as bonds, judgments and recognizances are subject to the twelve year period. The distinction undoubtedly relates to the reliability and durability of the evidence by which the varying causes of action must be established, and from this general viewpoint, there can be no doubt that suits for wages under the Fair Labor Standards Act, generally based on unwritten contracts, are in the same class as ordinary suits on wage contracts which are barred in three years after the right of action accrues.

We realize, however, that our decision may not be based upon logical or historic considerations as they may appear to us, but must be based rather on the Maryland rules as they have been evolved in the decisions of litigated cases in the Maryland courts; but we think that the application of these rules to the case at bar also supports the conclusion we have reached. We make reference particularly to four cases decided by the Court of Appeals of Maryland in the period between 1925 and 1941, to wit: Mattare v. Cunningham, 148 Md. 309, 129 A. 654; Mayor and City Council of Baltimore v. Household Finance Corp., 168 Md. 13, 176 A. 480; Sterling v. Reecher, 176 Md. 567, 6 A.2d 237; Taggart, Insurance Commissioner v. Wachter, Hoskins & Russell, Inc., 179 Md. 608, 21 A.2d 141, 141 A.L.R. 751. In considering these cases we must bear in mind that the twelve year statute lists, amongst others, actions upon "statute merchants or of the staple [6] or other specialty whatsoever"; and it is now recognized in Maryland and elsewhere that a suit upon a statute, as distinguished from a suit upon a contract, is a suit upon a specialty. For example in Mattare v. Cunningham, 148 Md. 309, 314, 315, 129 A. 654, 656, the court set out the following quotation from Wardle v. Hudson, 96 Mich. 432, 435, 55 N.W. 992: " 'Specialty by statute' means some right or cause of action given by a statute which does not exist at common law. In such cases the nature or cause of action does not depend, in any degree, upon any contract relation. There is no original obligation whatever created by the act of the parties."

And the Court of Appeals of Maryland also quoted the following passage from Wood on Limitation, 4th Ed., sec. 29: " * * * 'The test whether a statute creates a specialty debt or not might be said to be whether, independent of the statute, the law implies an obligation to do that which the statute requires to be done, and whether, independently of the statute, a right of action exists for the breach of the duty or obligation imposed by the statute. If so, then the obligation is not in the nature of a specialty, and is within the statute, so long as the common-law remedy is pursued; but, if the statute creates the duty or obligation, then the obligation thereby imposed is a specialty, and is not within the statute. If the statute

6 For a definition of these actions see Vol. 3 Bouvier's Law Dictionary, Rawle's 3rd Rev., at page 3134.

imposes an obligation, and gives a special remedy therefor, which otherwise could not be pursued, but at the same time a remedy for the same matter exists at common law, independently of the statute, and the statute does not take away the common-law remedy, the bar of the statute is effectual when the common-law remedy for the breach of the common-law duty or liability is pursued, but is not applicable when the special statutory remedy is employed.' "

If this description of the test must be taken literally, there would be an end to the discussion, because it cannot be denied that the Fair Labor Standards Act bears heavily upon this controversy in that the rights of the plaintiffs were strengthened and enlarged by the terms of the Act. But the answer is not so easy for as the Maryland decisions show, actions may be regarded as based on contract and therefore barred after the expiration of three years even if they are affected by or even though they owe their existence to legislative enactments. Thus in Taggart, Insurance Commissioner v. Wachter, Hoskins & Russell Inc., 179 Md. 608, 21 A.2d 141, 141 A.L.R. 751, an action by the receiver of an insolvent mutual insurance company against a policy holder to recover an assessment imposed under the terms of the policy was held to be a suit on a contract and not a suit on a specialty, although the policy provision limiting the amount of the assessment had been expressly authorized by an act of the Legislature. The court said at pages 624, 625 of 179 Md., at page 149 of 21 A.2d, 141 A.L.R. 751: " * * * This court has observed the distinction between limitations in suits on simple contract obligations and those in suits on statutory liabilities. Sterling v. Reecher, 176 Md. 567, 6 A.2d 237. It is sometimes a narrow one when the liability sued on is imposed by both a contract and a statute, but the stipulation here seems to remove all difficulty. The original purpose of the enterprise included a liability to contribute to pay losses, and as the policies did not restrict the losses payable to any limit on assessments it might be questioned whether a contract limit was consistent with that general purpose. Supreme Lodge K. P. v. Mims, 241 U.S. 574, 36 S.Ct. 702,

60 L.Ed. 1179. [L.R.A. 1916F, 919.] The Attorney General of Pennsylvania declared that such a restriction of assessments was unlawful, and the Insurance Commissioner of the State, extended the time for complying to March 13, 1929. It was in the situation thus arising that that statute was passed, not, as we construe it, to create a new liability, but to provide that an existing liability should be expressed in the contract but might be fixed at or above a specified minimum, equal to the amount of the original premium. This, the court takes to intend an authorization of a restriction rather than a creation of an obligation. And from this construction it follows that for the simple contractual obligation the limitation is three years from September 12, 1938, Code, Art. 57, sec. 1."

Even more significant is the decision in Mayor and City Council of Baltimore v. Household Finance Corporation, 168 Md. 13, 176 A. 480, a suit brought under provisions of the Maryland Code to recover taxes paid under a mistake of law. The statute changed the common-law rule that taxes paid under a mistake of law cannot be recovered, and the contention was accordingly made that the suit was based on a statutory specialty and could be brought at any time within twelve years from the accrual of the claim. But the court, conceding that some expressions in Mattare v. Cunningham, supra, gave support to the contention, nevertheless overruled it. The court held that the action was on an implied assumpsit arising from the duty of the city as declared by the statute to refund the tax payments mistakenly enacted. The court adopted as its own the reasoning set out in Metropolitan R. Co. v. District of Columbia, 132 U.S. 1, 10 S. Ct. 19, 33 L.Ed. 231, where the Supreme Court said at page 12 of 132 U.S. at page 23 of 10 S.Ct. " * * * The court below, in its opinion on the demurrer, suggests another ground, having relation to the form of the action, on which it is supposed that the plea of the statute of limitations in this case is untenable. It is this: that the action is founded on a statute, and that the statute of limitations does not apply to actions founded on statutes or other records or specialties, but only to such as are founded

on simple contract or on tort. We think, however, that the court is in error in supposing that the present action is founded on the statute. It is an action on the case upon an implied assumpsit arising out of the defendant's breach of a duty imposed by statute, and the required performance of that duty by the plaintiff in consequence. This raised an implied obligation on the part of the defendant to reimburse and pay to the plaintiff the moneys expended in that behalf. The action is founded on this implied obligation, and not on the statute, and is really an action of assumpsit. The fact that the duty which the defendant failed to perform was a statutory one does not make the action one upon the statute. The action is clearly one of those described in the statute of limitations."

In contrast with these decisions are the holdings in Mattare v. Cunningham, 148 Md. 309, 129 A. 654, and Sterling v. Reecher, 176 Md. 567, 6 A.2d 237, which were held to be suits upon a specialty and therefore governed by the twelve year period of limitations because the obligations sued on were in no sense contractual but solely statutory in origin. The first case was a suit on an award of the State Industrial Accident Commission which was held to be an obligation that arose in the course of a proceeding unknown to the common law but authorized by statute. The second case was a suit by a receiver against a stockholder of a bank to enforce the extra stockholders' liability, and it was held that by reason of the Maryland enactments, the remedy was solely statutory. The court said at page 571 of 176 Md., at page 239 of 6 A.2d: "* * * Previous to these statutes a fiction of contract between stockholder and creditor was used to rest on existing legal theory a suit by the creditor directly against the stockholder, but now that basis was abandoned; a liability to the bank or company directly was substituted; and stockholders, not of the date of contracting debts, but of the date of the receivership, were subjected to it. Ghingher

v. Bachtell, supra. [169 Md. 678, 679, 182 A. 558.] The analyses of the statutes in the opinions in Robinson v. Hospelhorn, [169 Md. 117, 179 A. 515; 184 A. 903, 103 A.L. R. 740] and Ghingher v. Bachtell, supra, are ample and need not be repeated. They seem to the court to leave no doubt that the remedy for the liability is now purely statutory, and the only right of action that on a speciality. See Cork & Brandon Ry. Co. v. Goode, 13 C. B. 826, and Hannum v. West Chester, 63 Pa. 475."

The obligations sued on in the present case are contractual in their nature. They depend on the contracts between the parties which arose out of the relationship of employer and employee, and their basic character is not changed by the fact that the terms of employment have been modified by the provisions of the Fair Labor Standards Act. We think that the provisions of the Act with reference to minimum wages, overtime compensation and liquidated damages are read into and become a part of every employment contract that is subject to the terms of the Act. The liability of the employer is for the wages due under working agreements which the federal statute compels employer and employee to make. This was the view taken by the court in Northwestern Yeast Co. v. Broutin, 6 Cir., 133 F.2d 628, which involved the validity of an attachment which in turn depended upon whether the claim was a contractual one; and it was the view also taken in Loggins v. Steel Construction Co., 5 Cir., 129 F.2d 118, where the question of limitations turned upon the inquiry whether the suit for wages under the statute was a suit in contract.[7]

We are strengthened in our position by the decision of the English court in Gutsell v. Reeve, 52 T.L.R. 55 (1935), wherein a statutory minimum wage was at issue and the ancient statute of limitations from which the Maryland Act was derived was considered. It was there held that the suit was on a contract of service which con-

---

[7] Accord: Johnson v. Anderson-Dunham Concrete Co., La.Sup., 31 So.2d 783; 7 W. H. Cases 83, where the Louisiana Supreme Court held that the obligation to pay statutory wages arises from the contract between the parties, as well as from the Federal Act, since the statute merely becomes part of the existing wage contract between the employer and the employee.

427

tained terms other than the amount of wages fixed by the Act of Parliament, and that the suit was not upon a specialty to which the longer period of limitations was applicable. In the course of the decision, the Master of the Rolls said: (p. 58) "In my judgment the effect of subsection 10 is merely to provide that where there is a contract of employment one item under the terms of that contract is to be, as it were, reconstructed by striking out the rate of wages, where it is lower than it ought to be, and by inserting the proper rate of wages in accordance with the statute".

It is of interest that in this decision the court distinguished the case before it from the decision in Cork & Brandon Ry. Co. v. Goode, 13 C.B. 826, which was an action for calls on railway shares based on statutory authority. The latter case was cited by the Court of Appeals of Maryland in Sterling v. Reecher, 176 Md. 567, 571, 6 A.2d 237, in support of its ruling that a suit to enforce the statutory extra shareholders' liability in Maryland is a suit on a statute speciality. The persuasive force of English decisions in this field was recognized.

Our attention has also been called to Pratt v. Cook, Son & Company, 56 T.L.R. 363 (1940) holding in effect that a suit under Section 4 of the Truck Act, (1831), to recover deductions from weekly wages illegally taken, was a suit on a specialty; but that decision does not conflict with the decision of Gutsell v. Reeve, or with the conclusion herein announced, because the contract of employment upon which the defendant relied was declared by the court to be illegal, null and void under the statute, and as a consequence, there was present no element of contract to support the contention that the shorter period of limitations applied.

Since some part of the plaintiffs' claims are barred by the three year statute of limitations of the State of Maryland, the judgment of the District Court must be reversed and the case must be remanded for further proceedings in conformity with this opinion. At the new trial consideration should be given to the effect of Section 11 of the Portal-to-Portal Act approved May 14, 1947, 29 U.S.C.A. § 260, wherein in any action commenced prior to or after the date of the enactment of the Act to recover minimum wages, overtime compensation or liquidated damages under the Fair Labor Standards Act, the court is given discretion as to the award of liquidated damages if the employer shows to the satisfaction of the court that he was acting in good faith and had reasonable grounds to believe that he was not violating the statute. See the per curiam opinion of the Supreme Court in Alaska Juneau Gold Mining Co. v. Robertson, 67 S.Ct. 1728.

Affirmed in part and reversed in part and remanded.