Benny **MULLINS, et al.**

v.

**HOWARD COUNTY, MARYLAND.**

Civ. No. PN–88–2774.

United States District Court,
D. Maryland.

Feb. 5, 1990.

Andrew H. Kahn and Francis J. Collins, Zukerberg & Kahn, P.A., Baltimore, Md., for plaintiffs.

Leonard E. Cohen and Mary E. Pivec, Frank, Bernstein, Conaway & Goldman, Baltimore, Md., and Barbara M. Cook, County Sol., and Richard Basehoar, Asst. County Sol., Howard County, Md., for defendant.

## OPINION AND ORDER

NIEMEYER, District Judge.

The plaintiffs, 78 firefighter employees of Howard County, Maryland, have sued Howard County contending that the method by which Howard County paid overtime wages to them during the period August 17, 1986, through July 9, 1988, violated the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–219 (1982). The employees were paid under a plan that averaged payments of straight time and overtime with each bi-weekly paycheck, even though they did not earn the specific amounts paid on a bi-weekly basis. They contend that the averaging of overtime wages as practiced by the defendant is illegal. Presented with cross-motions for summary judgment on this issue, the Court concludes that the method of payment as used by Howard County in the circumstances of this case did not violate the FLSA.

### I.

The firefighter employees of Howard County, a political subdivision of the State of Maryland, have traditionally worked one 24–hour shift, followed by off-duty time of two 24–hour shifts. Thus, each employee worked one day and was off two. The shifts were staggered so that firefighters were always on duty.

The firefighters' "work period" consisted of 21 days and during that work period they worked a total of 7 days, or 168 hours, and were off duty the remaining 14 days. The first 159 hours of the total 168 hours worked were designated "straight time" and the final 9 hours were designated "overtime" for which employees were paid one and one-half times the straight time rate. Thus, for example, in a 21–day period a firefighter would work 24 hours straight time each on days 1, 4, 7, 10, 13

and 16. On day 19 the first 15 hours were straight time and the final 9 hours were paid at the overtime rate.

Although the work period was 21 days and overtime was earned only on the last day worked by an employee during that 21–day period, the employees were paid every two weeks, presumably as an administrative convenience to Howard County. Because the work period ·(consisting of three weeks) and the pay period (consisting of two weeks) did not coincide, Howard County averaged the amounts earned and paid to the employees on each payday so that with each paycheck the employees were paid for 106 hours straight time and 6 hours overtime. A paycheck compensating the employee for this amount was thus received on day 14, which fell at the end of the first two weeks in the work period, and then on day 7 of the following work period. Over a six-week period the employee worked two work periods for a total of 318 hours of straight time and 18 hours of overtime, but he received three paychecks, each of which paid him for 106 hours of straight time and 6 hours of overtime, again totaling 318 hours of straight time and 18 hours of overtime.

In 1987 the International Association of Firefighters, Local 2000 and Howard County negotiated new pay scales based on the historically used methods for paying firefighters described above. They agreed that the specified bi-weekly amounts "were based on an average work week of 53 hours at straight time and 3 hours at time and one-half (168 hours in a 21–day period)." This agreement was effective for the period July 1, 1987, through July 30, 1988.

The plaintiffs now contend that the aspect of averaging that was incorporated in paying the employees 6 hours overtime and 106 hours straight time on each paycheck, rather than paying them specifically for the hours they worked in a given week, caused a temporary shortfall in the payment of overtime and loss of interest for the money not received. Although plaintiffs agree that by the end of two work periods, the total payments equalled the

total time worked, in the interim, they contend that the employer fell behind, causing the plaintiffs an illegal loss. More particularly, plaintiffs argue that by the time the first paycheck was received paying them for 106 hours straight time and 6 hours overtime, they actually worked 120 hours straight time and the entire first paycheck would have to be allocated to straight time. Because the pay earmarked for overtime would have to be allocated to straight time, a shortfall in overtime occurred. While they concede that the statute and regulations permit averaging of straight time they argue that overtime must be paid on a current basis. They contend that the plaintiffs are owed $36,370.46 by reason of the shortfall. They also seek an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b) (1982), plus reasonable attorneys' fees and court costs.

Howard County, on the other hand, contends that the plaintiffs agreed to the County's pay scheme through a collective bargaining agreement. Moreover, the defendant argues that the FLSA does not bar offsets or averaging. Defendant further argues that plaintiffs received far more in overtime payments than they earned. According to the County, plaintiffs actually worked many less hours of overtime than was scheduled because of sick leave, vacations, and other leave. Because of these periods when employees were not working, the threshold for triggering overtime pay, 159 hours per work period, often was not reached. Nevertheless, the County contends that it paid the employees for six hours of overtime and 106 hours of straight time per pay period because these were the expected and scheduled averages. Thus, defendant argues, the employees were paid for overtime that they never worked, resulting in a total overpayment of $233,478.47 to these plaintiffs.

## II.

As its first line of defense Howard County contends that its method of averaging wages was agreed to by plaintiffs in the collective bargaining agreement. The record, on which there is no dispute, confirms that plaintiffs' collective bargaining agreement with the County allowed the County to establish a pay plan whereby 6 hours of overtime and 106 hours of straight time would be covered by each paycheck. The exhibits attached to the relevant agreements between the plaintiffs' union and the County contain salary scales that list bi-weekly amounts, which are "[b]ased on an average workweek of 53 hours at straight time and 3 hours at time and one half (168 hours in a 21–day period)." *See, e.g.,* Exhibit B to Memorandum of Agreement between Howard County and the International Association of Firefighters, Local 2000, Effective July 1, 1987—June 30, 1988. These salary scales give rise to a reasonable inference that the employees' bi-weekly paychecks could be averaged to 6 hours of overtime and 106 hours of straight time.

Plaintiffs argue that the specific provisions in the agreement dealing with overtime do not contain any mention of averaging the paychecks and that the integration clauses preclude inferring such a term. A reading of the agreement, however, reveals no intent to preclude the possibility of averaging overtime pay. On the contrary, the salary scales listed in the exhibits suggest that averaging is permitted. Because the salary scales attached as exhibits to the agreement are incorporated into the agreement, they are not excluded by the integration clauses. The overtime provisions, while not specifying when payment is to be made, do explain how overtime pay is computed, i.e. that the amounts to be paid are to be based on the average workweek of 53 hours straight time and 3 hours overtime. Additionally, the payment practice of averaging had been in effect for several years before that contract, and this practice was not changed by it. Therefore, the Court agrees with the contention of Howard County that the averaging of overtime complied with the agreement reached with plaintiffs' union.

This, however, does not assure the legality of the County's position. Notwithstanding the agreement, it must still be determined whether the County's pay plan violated the terms of the FLSA. The Su-

preme Court has held that FLSA rights cannot be waived or otherwise abridged by contract. *Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 740, 101 S.Ct. 1437, 1444, 67 L.Ed.2d 641 (1981). "[C]ongressionally granted FLSA rights take precedence over conflicting provisions in a collectively bargained compensation arrangement." *Id.* at 740–41, 101 S.Ct. at 1445.

■ Firefighting personnel are subject to § 7(k) of FLSA which allows the employer to select any work period between 7 and 28 days as the basis upon which the employer will calculate overtime wages. 29 U.S.C. § 207(k). Howard County selected a 21–day work period. Within this period the first 159 hours worked are paid for as straight time and the last 9 hours worked are paid for as overtime. Even though the work period is 21 days, the firefighters are paid every 14 days an amount that averages the straight time and overtime of each paycheck at 106 hours and 6 hours, respectively.

Under the FLSA, averaging the straight time payments is permissible. The only requirement for straight time payments is that the work period must remain fixed regardless of how many hours of straight time are actually worked. *See, e.g.,* 29 C.F.R. § 553.224 (1989). This position was explained by the Department of Labor in a Letter Ruling dated October 28, 1986, submitted by defendant as Exhibit E. In that ruling, the Deputy Undersecretary of the Department approved a payment plan for firefighters that called for averaging straight time payments. Under the plan considered, the firefighters worked no more than 192 straight time hours in a 26–day work period. Averaging was permitted as long as the firefighters did not work more than the 197 hours maximum allowable under FLSA for a 26–day period. Thus, to the extent that Howard County averaged the straight time pay of the plaintiffs, there was no FLSA violation.

Overtime pay is governed by slightly different provisions. As a general rule, overtime pay earned in a particular workweek must be paid on the regular payday for that workweek. *See,* 29 C.F.R. § 778.106 (1989). That section provides as follows:

> There is no requirement in the Act that overtime compensation be paid weekly. The general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends. When the correct amount of overtime compensation cannot be determined until sometime after the regular pay period, however, the requirements of the Act will be satisfied if the employer pays the excess overtime compensation as soon after the regular pay period as is practicable. Payment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next pay day after such computation can be made.

Thus, if the amount of overtime compensation can be readily determined, it should be provided on the next regularly scheduled payday.

Nothing in the language of or policy underlying § 778.106 precludes the possibility of paying overtime *during the workweek and in advance* of the time when the overtime compensation is actually earned and payable and subsequently using a credit in the amount advanced against the final amount due on the regular payday. This method of advancing overtime cannot be used to frustrate the requirement that the employer must pay all straight time due for a workweek before paying overtime. Section 778.315 of the Code of Federal Regulations explains that:

> Overtime compensation, at a rate not less than one and one-half times the regular rate of pay, must be paid for each hour worked in the workweek in excess of the applicable maximum hours standard. This extra compensation for the excess hours of overtime work under the Act cannot be said to have been paid to an employee unless all the straight time compensation due him for the nonovertime hours under his contract (express or

implied) or under any applicable statute has been paid.

In short, the Department of Labor's interpretation of the FLSA, *see* 29 C.F.R. § 778.1, requires that all non-overtime compensation due for a particular workweek must be provided before paying any overtime for that workweek.

In applying the regulations to this case, the "workweek" for the firefighters is the 21–day work period. Although the employees in this case were not scheduled on a calendar-week basis, their 21–day work "periods" served the same purpose. The work periods that are provided for as the "workweek" in 29 U.S.C. § 207(k) afford flexibility to the County to meet the special demands and hours imposed on firefighting and law enforcement personnel while at the same time providing a basis from which overtime compensation may be computed.

■ The Court therefore concludes that overtime pay earned by an employee during a properly selected work period, whether it be a week or a 21–day period as is involved here, must be paid in the next paycheck after the overtime is worked, unless its computation cannot practicably be accomplished by then. Also straight time earned during the period must be paid before overtime pay is allowed, although the straight time and overtime may be paid in the same paycheck. An employer, however, is not precluded from paying advances of any amount *during* the "workweek" or appropriate work period against the final sum due in the first paycheck following the close of the work period. This is true whether the workweek is a 7–day period or a 21–day period. If, on the other hand, an employer averages payments for payment of more than one work period, he could not subject the employee to a deficit position in the payment of overtime wages. They must be paid in the next paycheck after the close of the work period in which the overtime was earned. *See* 29 C.F.R. §§ 778.106 and 778.315.

In order to examine the circumstances of this case, the following chart creates a paradigm of the payment plan used by Howard County. This assumes that the employee's first work day is day one in the 21–day period, which is the assumption most favorable to plaintiffs.

Cycle of Two Work Periods and
Three Paydays

| | Day No. | Actual Hours Worked | Time Paid for |
|---|---|---|---|
| | 7 | 72 ST<br>0 OT | |
| Pay<br>Day | 14 | 48 ST<br>0 OT | 106 ST<br>6 OT |
| End of<br>first<br>work period | 21 | 39 ST<br>9 OT | |
| Pay<br>Day | 28 | 72 ST<br>0 OT | 106 ST<br>6 OT |
| | 35 | 48 ST<br>0 OT | |
| Pay<br>Day<br>End of<br>second<br>work period | 42 | 39 ST<br>9 OT | 106 ST<br>6 OT |
| | Total | 318 ST<br>18 OT | 318 ST<br>18 OT |

ST = Straight Time
OT = Overtime

Thus, on day 14 the employee is paid for 106 hours straight time and 6 hours overtime, even though he has earned no overtime at that point. The amount paid for straight time is a shortfall, reflecting the averaging policy; the amount paid for overtime constitutes an advance against that which will be due after the work period is closed on day 21. Because the paycheck is *during* the "workweek" or work period, it is not a legally required paycheck and is not subject to the rules noted by the Court.

On day 28, which is the first payday after the end of the first work period, the plaintiff is paid for the remainder of all hours worked in the first work period. He again receives all straight time owed, and the 6 hours overtime pay which he receives compensates him for the remaining 3 hours of overtime earned and not paid in the previous work period and advances to him payment for 3 hours of overtime not yet earned.

On day 42 the employee is paid for all amounts earned to date in the second work period.

At no point has any payday passed without the employee having been compensated for at least 100% of all overtime earned. Plaintiffs would argue that at the time of the first paycheck, i.e on day 14, plaintiff has worked 120 hours straight time and has been paid for only 106. Because straight time must be paid before allocations can be made to overtime, the entire check paying for 112 hours must be deemed to be paid for straight time. The rules prescribing the payment of straight time before payment of overtime, however, apply to legally mandated paychecks. Nothing in the law prohibits an employer from making a voluntary advance *during* the "workweek" as an administrative convenience. The appropriate test is to examine the status on required paydays to determine whether the proper amounts have been paid. The required payday is the one that falls at the end of the "workweek" or work period or, if it does not fall at the end, that next follows the work period. In this case on day 28, which is the next payday and which is one week after the close of the first work period, the plaintiff is paid for all straight time as well as the earned overtime. The payment of overtime received on day 14 is but an advance against the final sums due on day 28, as agreed to in the collective bargaining agreement. Thus, on the first payday following completion of a 21–day work period, during which the employee worked 159 hours of straight time and 9 hours of overtime, he is compensated for 159 hours of straight time and 9 hours of overtime.

The plaintiffs note that after four weeks, which is two pay periods, the employee will have worked a total of 231 hours of straight time and 9 hours of overtime, but the total payment received for the two pay periods reflects only 212 hours of straight time and 12 hours of overtime. The difference is attributable to the fact that the employee works 72 hours of straight time in the first week of the second work period and yet is advanced payment for 53 hours of straight time and 3 hours of overtime. This difference, however, does not violate the FLSA. As already noted, advances *within* a work period are permissible.

The primary purpose of the FLSA is to protect workers from substandard wages and oppressive hours. *Barrentine*, 450 U.S. at 739, 101 S.Ct. at 1444. The FLSA ensures that workers receive "a fair day's pay for a fair day's work" and are protected from "the evil of 'overwork' as well as 'underpay.'" *Id.* (citations omitted). In this case, the Court fails to see how the County's pay plan violated the Act or injured the plaintiffs in any way.

Plaintiffs argue that *Roland Electrical Co. v. Black*, 163 F.2d 417 (4th Cir.1947), *cert. denied*, 333 U.S. 854, 68 S.Ct. 729, 92 L.Ed. 1135 (1948), requires a ruling in their favor. In the *Black* case, the employer sought to offset premium pay for undesirable hours against overtime liability for hours worked in excess of the statutory maximum. To induce the employees to work early in the day, late at night, or on the weekends, the employer promised them premium pay for such undesirable hours. The Fourth Circuit disallowed this practice because the premium pay was not intended

to be compensation for the overtime mandated by the FLSA. *Black*, 163 F.2d at 420–21.

This case differs from *Black* in that Howard County was not attempting to offset overtime with premium payments or some other form of pay that accrued independently of overtime pay. In *Black*, the employees suffered a shortfall in the total pay that was owed as a result of the offset imposed by their employer. Here, as previously discussed *supra*, the straight time and overtime compensation was fully paid on the first paycheck following the close of the appropriately selected work period.

Plaintiffs also cite *Harrington v. Empire Constr. Co.*, 71 F.Supp. 324 (D.Md. 1947), *aff'd as modified*, 167 F.2d 389 (4th Cir.1948), as supporting their claim. In *Harrington*, however, the court held that "the *Black* case does not forbid the application of overpayments made in a given week as credits against amounts due in the same week under the Fair Labor Standards Act." *Id.* at 331. In the present case, the firefighting employees do not work normal workweeks; rather, the 21–day work period serves as the equivalent time frame. The *Harrington* case suggests, therefore, that overpayment made during the work period may be credited against amounts due during that same work period. That is precisely what happened in the instant case.

Similarly, *Brennan v. Heard*, 491 F.2d 1 (5th Cir.1974), *Brennan v. Veterans Cleaning Service, Inc.*, 482 F.2d 1362 (5th Cir.1973), and *Hutchinson v. William C. Barry, Inc.*, 50 F.Supp. 292 (D.Mass.1943), which are cited by plaintiffs, offer no support for their position. The *Heard* case stands for the principle that set-offs may not result in sub-minimum wage payments to an employee. *See Heard*, 491 F.2d at 3–4. In *Veterans Cleaning*, the court held that wage advances must be made "free and clear," but if they are, then the advances may be offset by subsequent deduc-

tions, even if the deductions result in some payments falling below the minimum wage standard. *Veterans Cleaning*, 482 F.2d at 1369. The court added that "the Act does not require inflexibility in the timing of the payment of wages or seek to discourage loans to employees." *Id.* And in *Hutchinson*, the court merely held that the employer could not reduce the employee's pay because of absences from work because it was "a familiar practice to allow weekly-paid employees to absent themselves occasionally without loss of pay for sickness, funerals or the like." *Hutchinson*, 50 F.Supp. at 296. The present case does not involve payments that are below minimum wage. Nor does the present case involve setoffs against absenteeism by employees. None of these cases alter the Court's conclusion that the Howard County pay plan, in effect for the period August 17, 1986—July 9, 1988, did not violate the FLSA.

For the foregoing reasons given in this Opinion, it is hereby ORDERED this 5th day of February, 1990, by the United States District Court for the District of Maryland, that:

1. The motion of plaintiffs for summary judgment is denied;

2. The motion of defendant for summary judgment is granted, and judgment shall be entered in favor of Howard County and against all plaintiffs.