# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

———————

No. 95-4153

———————

Angela Johnson,      *
     *
        Appellant,      *   Appeal from the United States
     *   District Court for the District
v.      *   of North Dakota.
     *
Larry Methorst,      *
     *
        Appellee.      *

———————

Submitted: October 23, 1996

Filed: April 4, 1997

———————

Before MAGILL, BRIGHT and MURPHY, Circuit Judges.

———————

BRIGHT, Circuit Judge.

Angela Johnson brought this civil action against Larry Methorst for bodily injuries sustained in a motor vehicle accident. The jury awarded Johnson damages of $54,435, including $9,935 for past medical expenses and $30,000 for future medical expenses. The magistrate judge reduced the award for past medical expenses by $9,935 and the award for future medical expenses by $20,065, thereby reducing the award by a total of $30,000, representing the full amount of Methorst's no-fault insurance benefits. Johnson appeals the reduction of the award for future medical expenses. We reverse and remand.

## I.  BACKGROUND

On June 7, 1992, while driving a motor vehicle, Methorst struck Johnson, a pedestrian, injuring her knee and back.  Alleging diversity jurisdiction, Johnson brought a tort action for past and future damages in federal court.  Methorst admitted liability but disputed the nature and extent of Johnson's injuries.  Specifically, he claimed that Johnson's physical injuries pre-existed the accident.  The jury awarded Johnson damages of $54,435 as follows:

| | | |
|---|---|---:|
| a. | Past medical expenses | $ 9,935 |
| b. | Past pain, discomfort, mental anguish and/or permanent disability | 1,000 |
| c. | Past loss of productive time | 0 |
| d. | Future medical expenses | 30,000 |
| e. | Future pain, discomfort, mental anguish and/or permanent disability | 6,000 |
| f. | Future loss of productive time | 7,500 |

The court initially entered a judgment for $54,435, but then reduced the award by $9,935 for Johnson's past medical expenses because Methorst's no-fault insurance carrier already reimbursed or was about to reimburse Johnson for those costs.  As we have observed, the court also reduced the award for future medical expenses by $20,065.  Thus, the reduction totalled $30,000, which represented the full amount of Methorst's no-fault insurance benefits.  The court reasoned that Johnson's past and future medical expenses constituted economic loss "paid or to become payable" as basic no-fault benefits pursuant to the North Dakota Auto Accident Reparations Act (No-Fault Act), N.D. Cent. Code Ann.

§ 26.1-41 (1995), and, therefore, reduced the award to prevent Johnson from receiving a double recovery. The court then entered a final judgment in the amount of $24,435.

Methorst, as Appellee, argues that the district court properly reduced the award because "[s]ecured persons are exempt from liability in any action for economic loss, either past or future, to the extent no-fault benefits are available." Appellee Br. at 3. That analysis, however, misreads the unambiguous wording of the statute as applied to the facts of this case. No-fault benefits are not available for Johnson's future medical expenses and, therefore, the reduction was inappropriate.

## II.  DISCUSSION

On appeal, Johnson argues that the No-Fault Act does not authorize reducing her award for future medical expenses. We review de novo the district court's interpretation of a state statute. Thompson v. United States, 989 F.2d 269, 270 (8th Cir. 1993). To interpret the No-Fault Act, a court's "primary objective is to ascertain the intent of the legislature by looking at the language of the statute itself and giving it its plain, ordinary and commonly understood meaning. Consideration should also be given to the context of the statutes and the purposes for which they were enacted." Van Klootwyk v. Arman, 477 N.W.2d 590, 591-92 (N.D. 1991) (citations omitted). We begin, therefore, with the language of the No-Fault Act itself and the North Dakota Supreme Court's interpretation of that statute.

The No-Fault Act entitled Johnson to recover certain benefits, termed "basic no-fault benefits," from the no-fault insurer for "economic loss resulting from accidental bodily injury" up to the

sum of $30,000. N.D. Cent. Code Ann. § 26.1-41-01(1) (including definitions). The No-Fault Act defines "economic loss" to include medical expenses and work loss.[1] In addition, however, the No-Fault Act contains the following limited exemption from tort liability for "secured persons" such as Methorst:

> 1. In any action against a secured person to recover damages because of accidental bodily injury arising out of the ownership or operation of a secured motor vehicle in this state, the secured person is exempt from liability to pay damages for:

. . . .

> b. Economic loss to the extent of all basic no-fault benefits paid or to become payable for such injury under this chapter . . . .

N.D. Cent. Code Ann. § 26.1-41-08.

---

[1]The No-Fault Act includes the following definitions:

> 2. 'Basic no-fault benefits' means benefits for economic loss resulting from accidental bodily injury.

. . . .

> 7. 'Economic loss' means medical expenses, rehabilitation expenses, work loss, replacement services loss, survivors' income loss, survivors' replacement services loss, and funeral, cremation, and burial expenses.

. . . .

> 9. 'Medical expenses' means reasonable charges incurred for necessary medical, surgical, x-ray, dental, prosthetic, ambulance, hospital, or professional nursing services or services for remedial treatment and care rendered in accordance with a recognized religious healing method. . . .

N.D. Cent. Code Ann. § 26.1-41-01.

The district court construed this exemption to require not only a $9,935 reduction in the judgment for Johnson's past medical expenses (on which no dispute exists), but also a $20,065 reduction for future medical expenses, so as to total the full $30,000 allowable for no-fault benefits under Methorst's automobile insurance policy. The district court determined that future medical expenses constitute "economic damages," and the provisions of the secured person exemption "applies to both past ('paid') and future ('to become payable') economic damages." Dist. Ct. Order at 3. The issue here concerns the exclusion of $20,065 from the future medical expenses award.

The operative language of the No-Fault Act's secured person exemption is "economic <u>loss</u> to the extent of all basic no-fault benefits <u>paid</u> or to become <u>payable</u>." N.D. Cent. Code Ann. § 26.1-41-08(1)(b) (emphasis added). Significantly, the statute speaks in terms of <u>loss</u>, not damages, and whether no-fault <u>benefits</u> will "become payable." <u>Id.</u> According to the statute, no-fault benefits encompass "medical expenses," including reasonable charges incurred for necessary "medical" and "surgical" services as well as other health care services. N.D. Cent. Code Ann. § 26.1-41-01(9).

The statute, however, limits the no-fault insurer's obligation to provide benefits. For example, benefits are payable only after the no-fault insurer receives "reasonable proof of the fact and the amount of loss . . . ." N.D. Cent. Code Ann. § 26.1-41-09(2). Moreover, if a claim "has been or may be made for past or future basic . . . no-fault benefits," the insurer may require the injured person to submit to a mental or physical examination. N.D. Cent. Code Ann. § 26.1-41-11. Further, the no-fault insurer is entitled to discover facts about the injured person and may seek assistance of the court for such discovery. N.D. Cent. Code Ann. § 26.1-41-12. Finally, the No-Fault Act allows a maximum of four years in

which to bring a claim for benefits, thereby limiting the no-fault insurer's obligation to provide benefits into the future:

> If no basic or optional excess no-fault benefits have been paid for loss, an action for the benefits may be commenced not later than . . . four years after the accident . . . . If basic or optional excess no-fault benefits have been paid for loss, an action for recovery of further benefits for the loss by either the same or another claimant, may be commenced not later than four years after the last payment of benefits.

N.D. Cent. Code Ann. § 26.1-41-19(1).

Turning to the evidence of damages for future medical expenses in the record, we note that both parties argued this issue as a matter of law. The facts, however, play a significant role in the decision because the court must determine whether the future damages, in this case medical expenses, constitute an "economic loss" under the secured person exemption. Such an economic loss occurs under the statute only if no-fault benefits will "become payable." N.D. Cent. Code Ann. § 26.1-41-08(1)(b). Because the parties failed to provide any trial testimony, we requested and received the deposition testimony of three doctors who testified on behalf of Johnson and one doctor who testified on behalf of Methorst.

These depositions contain only opinions about future medical problems that may arise for Johnson and fail to provide any information about estimated costs for future medical treatment. The evidence indicates that Johnson will likely need prescriptions and treatment for the occasional onset of pain throughout her life; that she may require a diskectomy or surgery to install rods in her back; that she may be more susceptible to injuries because of the accident; and that she may need a total knee replacement in her

retirement years.  This testimony in effect describes Johnson's general damages of future pain and suffering, and the risk of future medical expenses, rather than any certain medical expenses. No certainty as to treatment exists and, therefore, no estimate of actual future medical expenses accompanied this testimony.[2]

Nevertheless, no part of the jury's award for future medical expenses is likely to entitle Johnson to recover no-fault benefits despite a possibility, or even a probability, of future medical problems.  Based on the testimony in the record, it is apparent that:

1.  Johnson never incurred the charges for future medical services under N.D. Cent. Code Ann. § 26.1-41-01(9).

2.  Because no certainty exists as to any treatment or costs, benefits are not payable under the No-Fault Act.

3.  Even if Johnson should require future treatment, she will incur the expenses long after the four-year statute of limitations expires for this 1992 accident.

We refuse Johnson's invitation to decide whether future medical expenses are always excluded from the exemption.  What is important in this case, is that the exemption's language applies not to future damages, but to "economic loss" to the extent of "no-fault benefits paid or to become payable."  N.D. Cent. Code Ann.

---

[2]We do not examine whether Johnson offered sufficient evidence to support the verdict because Methorst conceded sufficiency. Thus, we accept that the jury justifiably awarded $30,000 for future medical expenses as damages.  Notwithstanding the concession and jury award, we do examine the quality of that evidence on the issue whether benefits under no-fault will "become payable."

-7-

§ 26.1-41-08(1)(b)(emphasis added).  The term "become payable" requires certainty, not mere probability.[3]

Thus, Johnson's damages for future medical expenses do not qualify for payable benefits under the No-Fault Act.  Accordingly, the district court erred by reducing Johnson's tort recovery for future medical expenses.

Although we can resolve this diversity case governed by state law solely on the wording of the No-Fault Act, we look to North Dakota's case law for further guidance.  The North Dakota Supreme Court has not addressed whether future medical expenses fall within the secured person exemption, but the reasoning of North Dakota's case law lends support to our determination.

In Ellingson v. Knudson, 498 N.W.2d 814 (N.D. 1993), Justice Sandstrom ruled that an affidavit of a plaintiff's doctor failed to provide sufficient evidence that the plaintiff met the $2,500 threshold for establishing a serious injury under no-fault.  Id. at 818.  Plaintiff incurred actual medical expenses of $1,321.94.  Id. at 815.  The affidavit stated:

> 6.  I believe that Mr. Ellingson will continue to incur medical expenses in the future for treatment of injuries sustained in the incident of December 28, 1987.  These expenses will be incurred on a periodic basis during the course of his life time.  I would expect the periodic expenses to be at least as much as they have been on a periodic basis in the past.  This opinion is based upon a reasonable medical certainty.

---

[3]Webster's New World Dictionary (2d ed. 1984) defines "payable" as follows:

> **1.** Requiring payment on a certain date:  DUE.  **2.** Specifying payment to a particular person.  **3.** Capable of producing profit:  PROFITABLE.

Id. at 816.  In sustaining summary judgment for dismissal, the court stated:

> The affidavit does not specify the treatment Ellingson will need in the future.  The affidavit does little more than conclude that expenses in the future should equal expenses already incurred.
>
> The speculative nature of anticipated expenses grows as the expenses are projected into the future.  <u>Accordingly, the need for specific facts establishing medical certainty grows with these projections.</u>  Dr. Byron's affidavit suggests Ellingson may cross the medical expense threshold.  The absence of specific facts, combined with a lifetime measure, however, fail to raise a genuine dispute of fact as to whether Ellingson will cross the threshold with reasonable medical certainty.  Unspecified treatment over the next half century is too speculative to defeat summary judgment.

Id. at 818 (emphasis added).  This discussion indicates that even though a doctor testifies with a reasonable degree of medical certainty that future medical expenses may be incurred, such evidence is insufficient for no-fault purposes.  Specific facts must be established.

In <u>Reisenauer v. Schaefer</u>, 515 N.W.2d 152, 156 (N.D. 1994), the court in an opinion by Justice Levine granted a new trial because the district court may have erroneously excluded as exempt a jury award of $28,000 for past economic loss (past productive time loss).  The plaintiff objected to the exemption on grounds that it "would be 'ludicrous' to assume that he had received $28,900 in basic no-fault benefits."  <u>Id.</u>  The court emphasized that establishing economic loss under basic no-fault provisions required certainty: "The plaintiff knows what his basic no-fault benefits are, how much he has received, and how much he will get.  He also knows what his unreimbursed economic damages are."  <u>Id.</u>  In

addition, the court held that the issue whether the plaintiff's "economic loss exceeds the benefits paid or payable" is for the court, not the jury, to decide. Id. Finally, the court reiterated that "[t]he primary purpose of the No-Fault Act is to compensate automobile accident victims adequately." Id. at 155.

In this case, the admittedly liable tortfeasor seeks a windfall which is certain: a reduction in damages of more than $20,000. No assurance exists that Johnson will ever recover no-fault benefits for that amount or any amount. Indeed, we are quite certain that she will not. A plaintiff like Johnson is entitled to adequate compensation for her injuries. See Reisenauer, 515 N.W.2d at 155. In Johnson's case, that adequacy of compensation is measured by her recovery of the amount specified in the jury award, for if Johnson's award is decreased by a court, the no-fault insurer will not make up for such a decrease.

## III. CONCLUSION

The evidence in this case demonstrates that future medical expenses are speculative for no-fault purposes. Thus no further benefits will be paid to Johnson. As a result, the jury award cannot be reduced for future medical expenses. We reverse and remand for entry of an appropriate judgment consistent with this opinion.[4]

---

[4]The issue whether $7,500 in damages for future loss of productive time should be exempt has not been addressed by the parties on appeal, even though presented to but not reached by the district court. The record before us on appeal indicates that there has been no past loss of productive time. We leave it to the district court to consider that matter on remand if it is still an issue between the parties.

MAGILL, Circuit Judge, dissenting.

Because I believe that the majority's reading of North Dakota Century Code Annotated § 26.1-41-08(1)(b) (1995) is fundamentally flawed, I respectfully dissent.

In assessing the evidence of damages for future medical expenses, the majority concludes that "[b]ecause no <u>certainty</u> exists as to any treatment or costs, benefits are not payable under the No-Fault Act[, N.D. Cent. Code Ann. Ch. 26.1-41 (1995)]." Maj. Op. at 7 (emphasis added). The majority then holds: "[t]he term 'become payable' requires <u>certainty</u>, not mere probability. Thus, Johnson's damages for future medical expenses do not qualify for payable benefits under the No-Fault Act." <u>Id.</u> at 8 (emphasis added). The basic problem with the majority's reading of § 26.1-41-08(1)(b) is that, by stressing the requirement that future damages be certain, the majority's construction reads the word "become" out of the statute in contravention of North Dakota law. <u>Cf.</u> N.D. Cent. Code Ann. § 1-02-02 (1987) ("Words used in any statute are to be understood in their ordinary sense . . . ."); N.D. Cent. Code Ann. § 1-02-03 (1987) ("Words and phrases must be construed according to the context and the rules of grammar and the approved usage of the language.").

I disagree with the majority's reading of the statute because the phrase "become payable" does not require the degree of absolute certainty that the majority ascribes to it. Indeed, the word "become" indicates a future event; therefore, insofar as the future is inherently uncertain, the phrase "become payable" necessarily indicates an event that is, to some extent, inherently uncertain.

However, under the majority's reasoning, a future economic loss would never be "certain" enough to fall into the "become

payable" category. Only a right to be paid that is currently due would be certain. As a result, under the majority's reading, only a right to be paid for an economic loss that is currently due would warrant a reduction of a jury verdict under § 26.1-41-08(1)(b). In other words, the majority omits the word "become" from its reading of § 26.1-41-08(1)(b): the majority reads § 26.1-41-08(1)(b) as exempting economic loss to the extent of all basic no-fault benefits paid or payable.

Yet § 26.1-41-08(1)(b) exempts "[e]conomic loss to the extent of all basic no-fault benefits paid or to <u>become</u> payable . . . ." N.D. Cent. Code Ann. § 26.1-41-08(1)(b) (1995) (emphasis added). Thus, § 26.1-41-08(1)(b) exempts liability not only for economic losses that are currently due and payable, but also for future losses that are less than certain to become payable.

As the majority notes, "benefits are payable only after the no-fault insurer receives 'reasonable proof of the fact and the amount of loss . . . .'" Maj. Op. at 5 (ellipses in original) (quoting N.D. Cent. Code Ann. § 26.1-41-09(2) (1995)). The majority, however, does not explain why the jury's finding that Johnson has suffered a $30,000 economic loss in the form of future medical expenses is not "reasonable proof of the fact and the amount of loss," <u>id.</u> (quotations and citations omitted), or why the jury's finding is otherwise insufficient to hold that Johnson's injuries will become payable under the no-fault system. <u>See</u> Maj. Op. at 7 n.2.[5]

_____

[5]Instead, the majority engages in de novo factfinding to conclude that Johnson's injuries are not sufficiently certain to warrant a reduction of her jury award. Although "both parties argued this issue as a matter of law," the majority concludes that "[t]he facts . . . play a significant role in the decision because the court must determine whether the future damages, in this case medical expenses, constitute an 'economic loss' under the secured person exemption." Maj. Op. at 6. Accordingly, the majority "requested and received the deposition testimony of three doctors who testified on behalf of Johnson and one doctor who testified on behalf of Methorst." <u>Id.</u> After a de novo review, the majority makes the finding that "[n]o certainty as to treatment exists . . . ." <u>Id.</u> at 7.

The majority's de novo factfinding upon appellate review is

-12-

The majority's holding also undermines the purposes behind the No-Fault Act.  The "key aspect" of North Dakota's no-fault insurance scheme is "to transfer victim compensation from fault-based common law tort recovery to a compulsory no-fault insurance fund."  Reisenauer v. Schaefer, 515 N.W.2d 152, 155 (N.D. 1994).  By allowing Johnson to recover in a fault-based tort action, the majority has prevented this transfer of compensation.

---

procedurally troubling, if not procedurally erroneous.  Reviewing the depositions of expert witnesses to determine the certainty of treatment is an endeavor best left to the trial court.  See Reisenauer v. Schaefer, 515 N.W.2d 152, 156 (N.D. 1994) (holding that, though tort victim had not met his burden of presenting evidence pertaining to his past economic losses, "justice best is served by reversing and remanding with direction to the trial court to determine the amount of basic no-fault benefits paid or payable").

Furthermore, the majority's holding creates a substantial risk of double recovery by allowing Johnson to recover in her tort action.[6]  No provision of Chapter 26.1-41 of the No-Fault Act

---

[6]Soon after the enactment of N.D. Cent. Code Ch. 26-41--the predecessor to N.D. Cent. Code Ann. Ch. 26.1-41--Thomas O. Smith, the Special Attorney General to the North Dakota Insurance Department, wrote a law review article explaining the operation and purposes of the No-Fault Act.  He stressed that courts should reduce jury awards to prevent double recovery.  Specifically, he wrote:

> [A] 'secured person' is exempt from liability to pay damages for 'economic loss' to the extent that an injured person has been paid or will be paid basic no-fault benefits.  This means that recovery cannot be had from a 'secured person' in a tort action for any 'economic loss' which has been recovered or will be recovered in the future from an insurance company.  This eliminates the possibility of an injured person recovering basic no-fault benefits for his 'economic loss' from his insurance company and also recovering the same element of 'economic loss' from the secured person's insurance company under the motor vehicle liability insurance coverage.  Thus, a court in order to comply with the spirit of the law should consider in any suit for damages evidence of basic no-fault benefits which have been paid or will be paid in the future to an injured person(s) and reduce any judgment rendered in his favor by that amount.

Thomas O. Smith, "North Dakota Auto Accident Reparations Act"-- North Dakota's No-Fault Insurance Law, 52 N.D. L. Rev. 147, 158 (1975) (construing N.D. Cent. Code Ch. 26-41 (Interim Supp. 1975)) (notes omitted).

expressly prevents Johnson from seeking recovery from the no-fault fund for the same medical expenses that she has already recovered in tort. Therefore, although she has recovered from Methorst, Johnson is still free to seek recovery from the no-fault system, and in doing so, she may be twice compensated for a single injury.

For the foregoing reasons, I would hold that Johnson's recovery of future medical damages in her action against Methorst makes it sufficiently likely that her economic loss will become payable under the no-fault system. I would therefore affirm the decision of the magistrate judge to reduce the jury award.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.