RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2002 FED App. 0363P (6th Cir.)
File Name: 02a0363p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

ALEXIS M. HERMAN,
Secretary of Labor, United
States Department of Labor,
              *Plaintiff-Appellant,*

         No. 01-3080

   *v.*

FABRI-CENTERS OF AMERICA,
INC.,
              *Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 98-00970—Paul R. Matia, Chief District Judge.

Argued: June 14, 2002

Decided and Filed: October 17, 2002

Before: SILER and CLAY, Circuit Judges; WILLIAMS,
District Judge.*

———————————————————

*The Honorable Glen M. Williams, Senior United States District
Judge for the Western District of Virginia, sitting by designation.

1

―――――――――――

**COUNSEL**

**ARGUED:**    Leif Jorgenson, UNITED STATES DEPARTMENT OF LABOR, OFFICE OF THE SOLICITOR, Washington, D.C., for Appellant.  Keith L. Pryatel, KASTNER, WESTMAN & WILKINS, Akron, Ohio, for Appellee.  **ON BRIEF:**  Leif Jorgenson, Paul Frieden, UNITED STATES DEPARTMENT OF LABOR, OFFICE OF THE SOLICITOR, Washington, D.C., for Appellant. Keith L. Pryatel, Harley M. Kastner, KASTNER, WESTMAN & WILKINS, Akron, Ohio, for Appellee.

    CLAY, J., delivered the opinion of the court.  WILLIAMS, D. J. (p. 23), delivered a separate opinion concurring in the result.  SILER, J. (pp. 24-25), delivered a separate dissenting opinion.

―――――――――――

**OPINION**

―――――――――――

    CLAY, Circuit Judge.  Plaintiff, Alexis M. Herman, former Secretary of Labor of the United States Department of Labor ("the Secretary"), appeals from the judgment ordering Defendant, Fabri-Centers of America, Inc. ("FCA"), to pay $431,948.58 for its violations of sections 7, 11(c), 15(a)(2) and 15(a)(5) of the Fair Labor Standards Act of 1938 ("the FLSA"), 29 U.S.C. § 207(a)(1), § 211(c), § 215(a)(2) and § 215(a)(5).[1]  The district court determined that FCA owed the aggregate amount of $545,262.21 for its overtime liabilities under the FLSA, but that FCA was entitled to an "extra compensation" credit of $113,313.63 pursuant to 29 U.S.C. § 207(h)(2).  On appeal, the Secretary challenges the

―――――――――――

[1]Pursuant to Fed. R. App. P. 43(c)(2), Elaine L. Chao, the current Secretary of Labor, is automatically substituted as the proper plaintiff in this case.

district court's award of the extra compensation credit to FCA. For the reasons set forth below, we **AFFIRM** in part**, REVERSE** in part**,** and **REMAND** for further proceedings consistent with this opinion.

## BACKGROUND

### A. Procedural History

On April 24, 1998, the Secretary brought this enforcement action under section 17 of the FLSA, 29 U.S.C. § 217, in the United States District Court for the Northern District of Ohio, to enjoin FCA and its chief executive officer, Alan Rosskamm, from violating sections 7, 11(c), 15(a)(2) and 15(a)(5) of the FLSA. In the complaint, the Secretary sought overtime liabilities on behalf of FCA's unionized warehouse employees. Section 7 requires employers to pay covered employees for hours worked longer than forty in a workweek at a rate not less than one and one-half times the regular rate at which they are employed. 29 U.S.C. § 207(a)(1). Section 11(c) requires covered employers to "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him . . . ." 29 U.S.C. § 211(c). Under section 15(a)(2), it is unlawful for any person "to violate any of the provisions of section 206 or section 207 of this title." 29 U.S.C. § 215((a)(5). Section 15(a)(5) makes it unlawful "to violate any of the provisions of section 211(c). . . ." 29 U.S.C. § 215(a)(5). On June 11, 1998, the Secretary voluntarily dismissed Rosskamm under Fed. R. Civ. P. 41(a)(1).

The parties then prepared and filed a joint stipulation of the facts on September 14, 1998. On October 2, 1998, the parties filed their respective motions for summary judgment under Fed. R. Civ. P. 56. The Secretary sought a determination of the amount of the overtime liabilities that FCA owed to the workers, while FCA, in its cross-motion, petitioned for extra compensation credit against any determined overtime liabilities under the FLSA.

The district court issued a memorandum opinion and order on September 29, 2000, granting in part the Secretary's Rule 56 motion and granting in part FCA's cross-motion for summary judgment. Pursuant to a joint stipulation, the aggregate amount of FLSA overtime that FCA was liable to pay was $545,262.21. However, the district court determined that FCA was entitled to an "extra compensation" credit of $113,313.63. Thus, the net amount that FCA owed as a result of the district court's order was $431,948.58. A final judgment incorporating the joint stipulation was entered on November 21, 2000. The Secretary filed a timely appeal.

## B.   Substantive History

The relevant facts are undisputed. FCA owns and operates various retail stores, principally under the names of Jo-Ann Fabrics and Crafts, Cloth World, New York Fabrics, and Jo-Ann, to sell fabrics, notions and crafts. It also operates a warehouse and distribution center for the retail sale of fabrics, crafts and notions at 5555 Darrow Road in Hudson, Ohio. Pursuant to the FLSA, FCA is an "enterprise engaged in commerce or the production of goods for commerce" under 29 U.S.C. § 203(s)(1) and is an "employer" under 29 U.S.C. §203(d). Thus, it is undisputed that FCA is subject to the provisions of the FLSA.

The district court succinctly explained the nature of dispute as follows:

> The gravamen of this action is FCA's calculation of overtime. Prior to renegotiating the collective bargaining agreement, overtime pay for FCA employees was based solely on their base rate of pay. Notwithstanding the other rates of pay available at FCA, all overtime hours were compensated at the lowest rate possible. It is undisputed, however, that FCA's compensation plan allowed employees to earn premiums in excess of FLSA standards. These premiums accrued regardless of whether employees worked overtime. Thus, the question at the heart of this matter is whether the premiums paid

have been given some deference under *Chevron U.S.A. Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837, 842-844 (1984). I agree with the majority that no deference should be given to the opinion letters from the Secretary. If the Secretary wishes for deference, she has the authority to promulgate regulations which can be given deference under *Chevron*. Therefore, for the same reasons related by Judge Feikens in *Abbey*, I would affirm the decision of the district court here.

—————

**DISSENT**

—————

SILER, Circuit Judge, dissenting. I respectfully dissent, not because the majority opinion is illogical in its conclusion that the premium credits allowed by 29 U.S.C. § 207(h)(2) should be limited to the same work period in which the premiums were paid, but because the statute does not so provide. I would not penalize the employer who computes its premium credits as allowed in this case.

The majority opinion has analyzed the case law on this point. Thus, an employer in Illinois is restricted to premium credits within the same work period in which the premiums were paid. *See Howard v. City of Springfield,* 274 F.3d 1141, 1149 (7th Cir. 2001); *Nolan v. City of Chicago*, 125 F. Supp. 2d 324, 331-33 (N.D. Ill. 2000). On the other hand, a federal employer, a Georgia employer, or, previously, a Michigan employer, could receive premium credits over a greater period of time than the same work period. *See Alexander v. United States,* 32 F.3d 1571, 1577 (Fed. Cir. 1994); *Kolheim v. Glynn County,* 915 F.2d 1473, 1481 (11th Cir. 1990); *Abbey v. City of Jackson*, 883 F. Supp. 181, 186-87 (E.D. Mich. 1995). It is unfair for the Secretary of Labor to force an employer to pay the additional amount of $113, 313.63 when the statute does not so provide, no regulation has ever been promulgated on the subject, and employers in other states are allowed these premium credits. As Judge Manion states in his dissent in *Howard*, 274 F.3d at 1149: "Neither the provisions of § 207(h)(2) of the FLSA, nor its accompanying regulations, require such a limitation."

Both parties agree that FCA would be entitled to a credit of any premium pay. The issue is whether the premium pay credit is limited to the same time period. The Department of Labor has for more than ten years known that there was a dispute about the limitations of the premium credits, but it has chosen not to attempt to promulgate regulations which would

under the plan offset any alleged shortcomings in calculating overtime pay.

Plaintiff, Alexis M. Herman, Secretary of Labor, United States Department of Labor ("DOL"), contends that the FLSA dictates that FCA incorporate all employee pay rates into the base rate (or regular rate) for overtime purposes. The DOL further contends that premiums earned by employees may only offset overtime due within the same workweek. In rebuttal, FCA argues that the premiums can offset the total overtime due. After spot investigations at FCA, the DOL brought this action on behalf of FCA employees to recover overtime compensation that is allegedly owed under the former compensation plan.

(J.A. at 18-19.)

Central to these questions was the compensation formula that FCA used to determine the wages of warehouse employees during the time period in dispute, April 1, 1996 to May 17, 1998.[2] The warehouse employees ("the employees") were represented by the United Steelworkers of America, ALF-CIO-CLC (Upholstery and Allied Industries Division), Local Union No. 48U.[3] The employees were assigned a job code that represented their home base within the Hudson, Ohio warehouse where the employees were typically assigned to perform their work. Under the collective bargaining agreement, the employees were paid a "base rate" when working at their primary location or home job codes in the Hudson, Ohio warehouse. Their "regular pay" was

—————————————

[2]As the district court pointed out, FCA no longer uses this compensation formula, eliminating the policies challenged by the Secretary in the present appeal, when the collective bargaining agreement was amended on May 17, 1998.

[3]The warehouse employees in question did not include supervisors, sales representatives, part-time or clerical employees in the warehouse.

determined by multiplying their weekly in-home job hours worked times their hourly base rate.

For employees who worked outside of their home job codes, their "regular pay" was determined by the higher of one of two formulas. Under the first formula, if the calculated "average rate" resulted in compensation that was greater than the employees' non-home base hours multiplied by their hourly base rate plus "bonus pay," then the employees were entitled to compensation based upon their non-home base hours worked multiplied by their calculated "average rate." The employees' "average rate" was calculated by dividing the employees' aggregate earnings, including "overtime pay," for a six-month period and dividing the aggregate amount by the aggregate number of hours worked by the employees, including overtime hours, for that six-month period. If the use of the "average rate" for the employees working outside of their home job code did not result in a higher figure, then their "regular pay" was determined by multiplying their hours worked times their hourly rate plus "bonus pay."

Under the second formula used for employees who performed work outside of their home job codes, the employees received "bonus pay." FCA determined "bonus pay" by using either (1) the units of merchandise completed at each bonus tier multiplied by a set bonus rate for each such tier, or (2) special bonuses calculated by the job identification. If the "average rate" for employees working outside their home job code did not result in a higher figure, then the wage equaled the product of hours worked multiplied by the base rate plus any "bonus pay." In other words, compensation equaled the number of hours worked times the base rate, to which "bonus pay" was added.

FCA's warehouse employees also were paid "overtime pay," which was calculated by the aggregate "overtime" hours multiplied by 1.5 times their hourly base rates. Employees received overtime pay when they worked more than eight hours per day, or when they worked Saturdays after working forty hours during the work week. Employees were paid

_____

**CONCURRENCE**

_____

WILLIAMS, Senior District Judge, concurring. I concur in the result set forth in Judge Clay's opinion. I write separately to say that I believe that this opinion correctly follows the rules of statutory interpretation. Also, I agree with the opinion of the Seventh Circuit in *Howard v. City of Springfield,* 274 F.3d 1141 (7th Cir. 2001). I am of the opinion that the fourth, fifth and sixth paragraphs of the Substantive History section of this opinion have no application in this case and, at most, are dictum, in which I do not concur.

With regard to Judge Siler's dissenting opinion, his position has merit. However, if the law is to be corrected it should be done so by Congress or the administrative agency and not by the Court.

finding that FCA was entitled to an "extra compensation" credit of $113,313.63 pursuant to 29 U.S.C. § 207(h)(2) and **REMAND** the matter to the district court to determine the amount of compensation credit that FCA may claim on a pay period by pay period basis.

twice their hourly base rates for all Sunday work hours. Employees also received "holiday pay," which was calculated by virtue of the number of holiday hours worked times the "average rate" for that employee. "Average rate," "bonus pay," "downtime pay" and "shift differentials" were not included in the hourly base rate for purposes of calculating overtime pay when employees worked more than forty hours per work week. "Downtime pay" was calculated by multiplying the employees' downtime rate by their hourly downtime hours.

As the district court recognized, FCA did not contest the threshold issue of whether it violated the FLSA by calculating overtime payments using only the employees' base rate. As to this matter, the district court found that FCA violated the FLSA by failing to include the nondiscretionary bonuses, "average rate," and other "shift differentials" as part of the "regular rate." Thus, the district court held that the Secretary was entitled to a judgment as a matter of law on its claim that FCA's calculation of the "regular rate" for overtime purposes was in violation of the FLSA.

Instead, FCA's argument in the district court focused solely on whether it could credit the contract premiums paid to its employees against the overtime pay that was owed them. Specifically, FCA, in its cross-motion for summary judgment, sought to offset the overtime pay that was owed with the contract premiums that it had paid in excess of FLSA's requirements. In opposition, the Secretary claimed that under 29 U.S.C. § 207(h), FCA was allowed a credit only for the premiums that were paid during the same workweek. The district court summed up the dispute in the following terms: "FCA is claiming that all premiums are creditable regardless of the workweek they were paid, while the DOL contends that premiums can only be offset within the same workweek as the missed overtime."

In agreeing with FCA's argument, the district court, relying upon *Abbey v. City of Jackson*, 883 F. Supp. 181 (E.D. Mich. 1995), found that "[b]ased upon the plain language of § 207,

existing case law, and the legislative history of § 207 . . . [a]ll premium payments can be credited toward the total overtime owed." The district court specifically noted that there was no "qualifying language in the statute limiting credits on a workweek basis." The district court also stated that there was nothing in the language of § 207 or the Secretary's regulations that required it "to read a qualifier into clear statutory language." In granting judgment as a matter of law to FCA regarding its claim about crediting past premiums toward the overtime liability that it owed, the district court concluded: "Congress could have specified a per workweek limitation in § 207(h) if it saw fit. As it stands, that language, and therefore that limitation, does not exist in § 207(h), and the Court refuses to supply that limitation."

## DISCUSSION

### A.   Issue and Standard of Review

The issue before this Court is whether FCA may use its contract premiums to offset overtime owed to its employees only within the same workweek as the missed overtime, as the Secretary contends, or against the total amount of overtime owed, as FCA maintains, under 29 U.S.C. § 207(h).[4] This Court reviews the district court's grant of summary judgment *de novo*. *Herman v. Collis Foods*, 176 F.3d 912, 916 (6th Cir. 1999). When the facts of a case are undisputed, and the sole issue before this Court is a legal question, the legal question is reviewed *de novo*. *Id.* In this case, the district court erred in granting FCA's cross-motion for summary judgment by finding that FCA was entitled under 29 U.S.C. § 207(h)(2) to apply contract premiums as credit against the total overtime owed.

---

[4] As the district court noted, it was undisputed that FCA's compensation plan allowed employees to earn premiums in excess of FLSA standards. The contract premiums were apparently paid pursuant to a collective bargaining agreement and were not required by the FLSA.

the officers or agency charged with its enforcement.'" *Biggs,* 1 F.3d at 1543 (quoting *Udall v. Tallman*, 380 U.S. 1, 16 (1965)). Specifically, in an opinion letter dated December 23, 1985, the Deputy Administrator stated:

> We wish to point out that surplus overtime premium payments, which may be credited against overtime pay pursuant to section 7(h) of [the] FLSA, may not be carried forward or applied retroactively to satisfy an employer's overtime pay obligation in future or past pay periods.

1985 WL 304329, at *3 (DOL Wage-Hour, December 23, 1985). The Secretary claims that this interpretation is consistent with previous Wage-Hour opinion letters, 66-69 CCH-WH ¶ 30,524 and ¶ 30,527, dated December 2 and December 20, 1966, expressing the view that the workweek or work period concept is the standard point of reference for interpreting the provisions of the FLSA.

We note the pertinent content of these opinion letters for illustrative purposes; we would hold as we do even in the absence of such opinion letters. The informative nature of these opinion letters which support the Secretary's interpretation of § 207(h) is not lessened by the fact that the opinion letters in question were directed to third parties, not FCA. *See United States v. Mead Corp.*, 533 U.S. 218, 235 (2001) (finding that Custom's classification ruling was entitled to "respect proportional to its 'power to persuade'" under the principles stated by Justice Jackson in *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) and that "[s]uch a ruling may surely claim the merit of its writer's thoroughness, logic and expertness, its fit with prior interpretations, and any other sources of weight").

## CONCLUSION

Thus, for the forgoing reasons, we **AFFIRM** the district court's order finding that FCA was liable for the aggregate amount of $545,262.21 for its overtime liabilities under the FLSA. However, we **REVERSE** the district court's order

interpreting the version of the FLSA then in effect, held that an employer must pay overtime "promptly and when due" and is not allowed to compromise or settle sums due employees by "withholding wages beyond the time when they should be paid." 163 F.2d at 421. Specifically, *Roland* noted "that the Act takes as its standard a single workweek consisting of seven consecutive days." *Id.* Although *Roland* was decided before § 207(h) was enacted in 1949, and thus did not address the issue of crediting, it enunciated the broad principle that the workweek or work period is central to the understanding of the FLSA.

Contrary to FCA's argument, the Secretary's interpretation of § 207(h)(2) does not provide a "windfall" for its employees in this case. As the Secretary points out, FCA exceeded the requirements of FLSA, choosing to pay its workers certain premiums. Given that there is nothing in the FLSA generally or § 207(h)(2) in particular that required FCA to pay these premiums, any "windfall" arose as a result of FCA's own chosen pay practices. Accordingly, we agree with the Secretary that FCA's pay practices should not control the operation of the FLSA. Were that the case, then an employer who paid twice the minimum wage in one week would not owe anything the following week for the same number of hours worked. See *Barrentine v. Arkansas-Best Freight Sys. Inc.*, 450 U.S. 728, 739 (1981) (remarking that "[t]he Fair Labor Standards Act was not designed to codify or perpetuate [industry] customs and contracts").

Finally, we note that the Secretary's interpretation of § 207(h)(2) has been set forth in several Wage-Hour opinion letters issued by the Wage and Hour Division of the Department of Labor interpreting 29 U.S.C. § 207(h)(2) as applying a workweek or work period standard.[8] "When faced with a problem of statutory construction, federal courts should show 'great deference to the interpretation given the statute by

---

[8]The Wage and Hour Division of the Department of Labor was created to administer the Act. 29 U.S.C. § 204.

## B.   Analysis

In deciding this case, we are guided by the principles of statutory interpretation. When interpreting a statute, this Court must begin with its plain language, and may resort to a review of congressional intent or legislative history only when the language of the statute is not clear. *In re Comshare, Inc.,* 183 F.3d 542, 549 (6th Cir. 1999) (citing *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980)). "Where the literal language of the statute does not conclusively reveal legislative intent, the courts must look beyond literal meaning, analyzing the provision in context with the whole." *In re Arnett,* 731 F.2d 358, 361 (6th Cir. 1984) (citing *Kokoszka v. Belford*, 417 U.S. 642, 650 (1974)). Further, we note that the FLSA, as a statute designed to protect individual rights, is "remedial and humanitarian in purpose," and "must not be interpreted or applied in a narrow, grudging manner." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944); *see also Lambert v. Ackerley*, 180 F.3d 997, 1003 (9th Cir. 1999).

Section 207(h) addresses extra compensation creditable toward overtime compensation as follows:

(1) Except as provided in paragraph (2), sums excluded from the regular rate pursuant to subsection (e) shall not be creditable toward wages required under section 6 or overtime compensation required under this section.

(2) *Extra compensation paid as described in paragraphs (5), (6), and (7) of subsection (e) of this section shall be creditable toward overtime compensation payable pursuant to this section.*

29 U.S.C. § 207(h)(1) and (2) (emphasis added).[5]  As the Secretary points out, the statute is silent as to when "extra compensation" credit may be used, and, thus, the plain language of the statute does not determine whether FCA may

---

[5]Paragraphs (5), (6), and (7) of § 207(e) provide as follows:

e) "Regular rate" defined

As used in this section the "regular rate" at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include--

* * *

(5) extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under subsection (a) of this section or in excess of the employee's normal working hours or regular working hours, as the case may be;

(6) extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in nonovertime hours on other days;

(7) extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employment contract or collective-bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular workday (not exceeding eight hours) or workweek (not exceeding the maximum workweek applicable to such employee under subsection (a) of this section, where such premium rate is not less than one and one-half times the rate established in good faith by the contract or agreement for like work performed during such workday or workweek[.]

29 U.S.C. § 207(e)(5), (6) and (7).  As FCA acknowledges, there is no dispute that its premium payments fit within 29 U.S.C. § 207(e)(5), (6) and (7).

---

The City, however, advocates a method of payment that would allow it to pay its overtime obligations at a time far removed from when that overtime amount was due. That is inconsistent with the statutory requirement that overtime payments must be timely made.

*Howard*, 274 F.3d at 1148.

In addition, the Ninth Circuit's opinion in *Biggs v. Wilson*, 1 F.3d 1537 (9th Cir. 1993) supports the Secretary's contention that its interpretation prevents possible abuses of the FLSA.  In that case, the Ninth Circuit addressed the issue whether an employer's late payment of wages constituted a violation of the minimum wage requirement provision stated in 29 U.S.C. § 206(a).  Similar to § 207(h)(2), there is no express language in § 206(a) specifying when § 206(a) is to apply.  Analyzing the statutory scheme as a whole, the Ninth Circuit concluded that § 206(a) should be applied with the workweek standard as the reference point.  In *Biggs*, the Ninth Circuit noted that "[t]he obligation [to pay the minimum wage] kicks in once an employee has done covered work in any workweek," and that "[i]f a payday has passed without payment, the employer cannot have met his obligation to 'pay'." *Id.* at 1539.  As *Biggs* noted, "[u]nless there is a due date after which minimum wages become unpaid, imposing liability for both unpaid minimum wages and liquidated damages would be meaningless." *Id.*  The same reasoning for using the workweek or work period standard also applies with respect to § 206(h) since it compels employers to make timely payments of overtime in conformity with the Act.  *See* 29 C.F.R. 778.106 (requiring timely overtime payments); *see also Brooklyn Savs. Bank v. O'Neill*, 324 U.S. 697, 709 n.20 (1945) ("The necessity of prompt payment to workers of wages has long been recognized by Congress as well as by state legislatures.")

Further, as the Secretary points out, *Roland Electric Co. v. Black,* 163 F.2d 417 (4th Cir. 1947) supports the idea that the statutory provision in question should operate on a workweek or work period basis.  In *Roland*, the Fourth Circuit,

from the twin evils of excessive work hours and substandard wages. *Barrentine [v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728,  739 (1981)]; *Monahan v. County of Chesterfield, Virg.*, 95 F.3d 1263, 1267 (4th Cir.1996).   Toward that end, the statute requires the payment of time and a half for overtime work.  Courts have long interpreted the FLSA as requiring that those payments be timely made. *Brooklyn Savs. Bank v. O'Neil*, 324 U.S. 697, 703-07 (1945); *Rogers v. City of Troy, N.Y.*, 148 F.3d 52, 55 (2d Cir.1998); *Calderon v. Witvoet*, 999 F.2d 1101, 1107 (7th Cir.1993).  Thus, the statute is violated even if the employer eventually pays the overtime amount that was due. *See Rogers*, 148 F.3d at 55.  In fact, that requirement may not be waived, and "even the workers' enthusiastic assent to deferred payment—a form of employer-held savings account—is ineffectual." *Calderon*, 999 F.2d at 1107.  That principle is also found at 29 C.F.R. § 778.106, which provides in relevant part:

> The general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends.  When the correct amount of the overtime compensation cannot be determined until some time after the regular pay period, however, the requirements of the FLSA will be satisfied if the employer pays the excess overtime compensation as soon after the regular pay period as is practicable. Payment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made.

Although that regulation is not entitled to deference, . . . it is nonetheless persuasive as it is consistent with the interpretation of the FLSA that the courts have reached. Therefore, under the statute, overtime generally must be calculated and paid on a pay period by pay period basis.

apply its contract premiums only in the same workweek or work period in which the overtime liability was incurred, or whether it may use it against the total overtime deficiency. Moreover, as the parties recognize, no Department of Labor ("DOL") regulation specifically addresses the precise issue in this case.  Thus, in determining whether § 207(h)(2) permits FCA to use its contract premiums to offset overtime owed to its employees, we need to examine the text of the statutory provision in light of the relevant legislative history and in context with the FLSA as a whole and its implementing regulations.

### 1.   The legislative history of § 207(h)(2)

A review of the relevant legislative history tends to favor the Secretary's position that the statute should be interpreted to include a workweek or work period restriction.  As the parties acknowledge, 29 U.S.C. § 207(e)(5), (6) and (7), and § 207(h) were enacted in response to the Supreme Court's decision in *Bay Ridge v. Aaron*, 334 U.S. 446 (1948).  In *Bay Ridge*, the Court, interpreting a contract between stevedoring companies and the International Longshoremen's Association ("ILA"), required the employers to pay statutory overtime compensation that was calculated by including certain contractual premiums in the regular rate, and thus pay "overtime on overtime."  As a result of *Bay Ridge*, Congress responded by passing Public Law 177, which contained language that allowed credit for contractual premiums paid by employers "toward *any* premium compensation due" under section 7 of the Act.   Fair Labor Standards Act of 1938, Pub. L. No. 177, § 207, 52 Stat. 1063 (1949) (emphasis added).

As the parties acknowledge, the life of the "toward *any* premium compensation due" language of Public Law 177 was short-lived.  Soon thereafter, Congress, through Public Law 81-393, passed extensive revisions of the FLSA, creating the present statutory language found at § 207(h)(2), which allows credit for contractual premiums "toward overtime compensation payable pursuant to this section."   29 U.S.C.

§ 207(h)(2). As the Secretary points out, the problem of employees receiving statutory overtime that included contractual premiums, as required by *Bay Ridge*, was solved by the enactment of sections 7(e)(5), (6) and (7), which explicitly reference the workweek. Thus, when the FLSA was amended in 1949, 29 U.S.C. §§ 207(e)(5), (6), and (7) excluded certain premium payments from the computation of overtime, while 29 U.S.C. § 207(h) allowed those payments to be credited against FLSA overtime. The Secretary notes:

> It was considered unfair to require the inclusion of contractual premiums not required by the Act in the regular rate of pay for overtime purposes, thereby making the employer pay "overtime on overtime." *See* Senate. Rep. No. 402, 81st. Cong., 2nd. Sess. (1949). It was also considered fair to employers to give them credit for certain contractual premiums they paid against the statutory overtime they might owe. *Id*. As described above, however, there can only be concomitant fairness to employees if the crediting permitted by section 7(h) is limited to the workweek in which the premiums are paid.

Plaintiff's Br. at 16-17.

In view of these revisions of the FLSA, the Secretary reasons that it makes sense to interpret the related enactment of section 7(h) to allow for crediting on that very same workweek basis since "the problem resulting from *Bay Ridge, supra*., which section 7(h)(2) was enacted to remedy, involved employees who routinely received a contractual premium and worked statutory overtime *in the same week*." Plaintiff's Reply Br. at 4-5 (emphasis in original). In further support of its interpretation of § 207(h)(2) as containing a workweek qualification, the Secretary also cites to Senate Report 81-402, at 4 (1949), which references paragraphs 13, 69, 70 of the Wage and Hour Interpretative Bulletin No. 4, which contain examples regarding the crediting of contractual premiums against statutory overtime owed to employees by using the seven-day workweek as the standard reference point. Accordingly, it would appear that the legislative

implementing regulations lend support to the Secretary's position that premium credits allowed by § 207(h)(2) should be limited to the same workweek or work period in which these premiums were paid.

### 3.   Case law interpreting § 207(h)(2)

Given the silence in the statute as to when overtime compensation may be credited and the lack of an implementing regulation on this precise issue, it is perhaps not surprising that divergent case law has arisen. One line of case law supports the Secretary's interpretation that premium credits allowed by § 207(h)(2) should be limited to the same workweek or work period in which these premiums were paid. *See Howard v. City of Springfield*, 274 F.3d 1141, 1149 (7th Cir. 2001) (holding that employer may apply certain credits against overtime owed on a pay period by pay period basis); *Nolan v. City of Chicago*, 125 F. Supp. 2d 324, 331-33 (N.D. Ill. 2000) (holding that "the offsets should be calculated on a period by period basis"). Another line of case law supports FCA's interpretation. *See Alexander v. United States*, 32 F.3d 1571, 1577 (Fed. Cir. 1994) (noting that the "1931 Act pay [premium pay pursuant to subsections (5) and (6) of § 207(e)] is creditable toward any overtime compensation due under the FLSA"); *Kolheim v. Glynn County, Ga.*, 915 F.2d 1473, 1481 (11th Cir. 1990) (holding "that the county should be allowed to set-off all previously paid overtime premiums . . . against overtime found to be due and owing during the damages phase of the trial"); *Abbey v. City of Jackson*, 883 F. Supp. 181 (E.D. Mich. 1995) (holding that premium payments for overtime hours may be used to offset all deficiencies in overtime under the FLSA).

Notwithstanding, the case law supporting the Secretary's interpretation appears to be more persuasive. Specifically, as noted by the Seventh Circuit in *Howard,* allowing the employer to use premiums to offset the total liability is inconsistent with the language and purpose of the statute:

> The credit provision must be read in the context of the statute as a whole, which is designed to protect workers

employer may employ any employee [in the tobacco industry]")(emphasis added).

In addition, the Department of Labor ("DOL") regulations implementing the Act support prompt payment of overtime, suggesting that the premiums should be credited within the same workweek in which they were paid.  Specifically, 29 C.F.R. § 778.106 provides in pertinent part:

> The general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends.  When the correct amount of overtime compensation cannot be determined until some time after the regular pay period, however, the requirements of the Act will be satisfied if the employer pays the excess overtime compensation as soon after the regular pay period as is practicable. Payment may not be delayed for a period longer than is reasonably necessary for the employer to compute and arrange for payment of the amount due and in no event may payment be delayed beyond the next payday after such computation can be made.

29 C.F.R. § 778.106.  *See Reich v. Interstate Brands Corp.*, 57 F.3d 574, 576 (7th Cir. 1995) (noting the "general rule is that overtime compensation earned in a particular workweek must be paid on the regular pay day for the period in which such workweek ends") (quoting 29 C.F.R. § 778.106); *see also* 29 C.F.R. § 778.103 (directing employers to pay overtime due on a weekly basis); 29 C.F.R. § 778.104 (stating that an employer cannot average the number of hours worked over two weeks in order to avoid paying overtime); 29 C.F.R. § 778.202(c) (finding that credits may be given for daily compensation "against the overtime compensation which is due under the statute for hours in excess of 40 in that workweek").

Thus, while the plain language of § 207(h)(2) does not speak directly to the present issue and while the Secretary has not promulgated or published any regulation pertaining to this statutory provision, these other provisions in the FLSA and its

history of the statute supports the notion that the workweek or work period is central to an understanding of § 207(h)(2).

FCA has a completely different understanding of the Congressional response in 1949 to *Bay Ridge*.  According to FCA, the Congressional debates confirmed the view that contract premium payments may be credited against any overtime compensation due under the Act.  FCA argues that the present statutory language is merely "somewhat watered down from its predecessor 'credited toward any premium,'" and represents only a "minor shift in text."  Defendant's Br. at 21-22.  On FCA's view, the present statutory language of § 207(h)(2) is merely a repackaged version of the earlier statutory language, and that "the ghost of the . . . 'credited toward any premium compensation due' [language] continues to haunt the statute's intent." Defendant's Br. at 23.

However, FCA's statutory construction of § 207(h)(2) is at variance with the applicable principles of statutory interpretation.  As the Secretary correctly points out, the fact that Congress deleted "any" in amending the statute means that it presumed that the omitted term was not intended to have any effect on the present version of the statute.  *See Russello v. United States*, 464 U.S. 16, 23-24 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion. . . . We would not presume to ascribe this difference to a simple mistake in draftsmanship.") (internal quotation marks omitted); *see also Petrey v. City of Toledo*, 246 F.3d 548, 561 (6th Cir. 2001).  Here, Congress specifically removed the language in question that it had inserted in the previous version before the enactment of the revised statute.  This provides even greater support for the presumption that the removed language was not intended to have any effect on the meaning of the amended statute.  *See Stewart v. Ragland*, 934 F.2d 1033, 1037 n.6 (9th Cir. 1991) ("When legislators delete language, we may assume that they intended to eliminate the effect of the previous wording.").

Nevertheless, FCA maintains that the statute clearly allows "extra compensation" to be credited against any overtime due under the FLSA because the "carefully selected and varying tenses of the verbs used under section 207(h)(2) also betray Congress' clear intent." Defendant's Br. at 26. Specifically, FCA argues that "while the statute uses the rear-looking, past tense 'paid' to describe the extra compensation to be offset, it in marked contrast uses the forward-looking verbs 'creditable' and 'payable' to describe the crux of the benefit legislated for employers." Defendant's Br. at 26. According to FCA, "[t]he clear message sent by the word 'payable' is that it applies to future payments, not those already paid." Defendant's Br. at 27.

FCA's explanation as to Congress' linguistic intent falters in this respect because the term "payable" is not customarily understood to relate to future payments. "Payable" is defined in Black's Law Dictionary:

> Capable of being paid; suitable to be paid; admitting or demanding payment; justly due; legally enforceable. A sum of money is said to be payable when a person is under an obligation to pay it. *Payable may therefore signify an obligation to pay at a future time, but, when used without qualification, the term normally means that the debt is payable at once, as opposed to "owing."*

Black's Law Dictionary 1128 (6th ed. 1990) (emphasis added);[6] *see also Truillo v. Cyprus Amax Mineral Co. Ret. Plan Comm.*, 203 F.3d 733, 737 (10th Cir. 2000) (noting that the term "payable" under the Employee Retirement Income Security Act "means '[c]apable of being paid; suitable to be paid; admitting or demanding payment; justly due; legally enforceable'")(quoting Black's Law Dictionary 1128 (6th ed. 1990)); *In re Ripley,* 926 F.2d 440, 444 (5th Cir. 1991) (citing

---

[6] Similarly, "payable" is defined in Black's Law Dictionary 1150 (7th ed. 1999) as follows: "(Of a sum of money or a negotiable instrument) that is to be paid. • An amount may be payable without being due. Debts are commonly payable long before they fall due."

Black's Law Dictionary to interpret "payable" in section 1305(a)(1) of the Bankruptcy Code to mean that "taxes that have 'become payable' are those that must be paid now").[7] Because the term "payable" is not customarily understood to apply to future payments, we reject FCA's argument that "payable," as found in § 207(h)(2), evinces Congress' intent to allow "extra compensation" to be credited against any overtime liability due under the FLSA.

### 2. The FLSA as a whole and its implementing regulations

An analysis of the FLSA as a whole and its implementing regulations also favors the Secretary's view that § 207(h)(2) should be interpreted to include a workweek or work period restriction. As the Secretary points out, the FLSA as a whole and the DOL's implementing regulations of the Act highlight the primacy of the workweek concept. First, various provisions of the FLSA explicitly note the primacy of the workweek. *See* 29 U.S.C. § 207(a)(1) ("Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce . . . for a *workweek* longer than forty hours. . . ") (emphasis added); 29 U.S.C. § 207(l) ("No employer shall employ any employee in domestic service . . . for a *workweek* longer than forty hours . . . ") (emphasis added); 29 U.S.C. § 207(m) ("For a period or periods of not more than fourteen *workweeks* in the aggregate in any calendar year, any

---

[7] *See also Johnson v. Methorst*, 110 F.3d 1313, 1317 n.3 (8th Cir. 1997) (noting that "Webster's New World Dictionary (2d ed. 1984) defines 'payable' in part as '[r]equiring payment on a certain date: DUE'"); *Cathey v. United States*, 35 F. Supp. 2d 518, 520 (S.D. Tex. 1998) (noting that "English dictionaries agree on the meaning of payable, defining it to mean *inter alia* '[t]hat may, can, or should be paid,' 'due,' or 'capable of being paid'"); *Royal Indemnity Co. v. Wyckoff Heights Hosp.*, 953 F. Supp. 460, 466 (E.D. N.Y. 1996) ("Although 'payable' might mean a future obligation in some circumstances, as is used in the Policy, the only reasonable understanding is that it adds to the meaning of 'paid' by including a sum which is enforceably due or obligated, but not yet actually remitted.").